[No. 3713.]

## THE TRAVELERS INSURANCE CO. v. CHILDS, ADMINISTRATOR.

1. WATER RIGHTS—ACTION TO QUIET TITLE—RENTS.

A water right is real estate, and an action cannot be maintained to quiet title thereto by an administrator, but an action may be maintained by the administrator for rents due the estate for use of such water right.

2. WATER RIGHTS—CONVEYANCE.

Whether or not a water right passes in a deed conveying lands without any specific mention of the water right, depends upon the intention of the grantor to be gathered from the express terms of the deed, and if the deed is silent, from the presumptions arising from circumstances surrounding the transaction. And the same rule applies to a release deed by a trustee.

3. SAME.

Where a deed of trust conveyed two tracts of land together with certain water rights, and a water right that had been located and used on one tract was, during the existence of the trust deed, segregated from that tract and transferred to and used exclusively upon the second tract, a release of the former tract that did not mention this specific water right, but released only such water rights as were used in connection with the land released, did not release this water right, but it remained subject to the lien of the trust deed, and upon foreclosure passed to the purchaser.

*Error to the County Court of Weld County.*

THIS action was begun in the county court of Weld county by Francis L. Childs, as administrator. Apparently it was

brought on the probate side of the court, for the initial plead-ing is styled a petition, and the party brought into court is called the respondent. The petition contains three causes of action, the first two of which are not involved here, and it is only the third with which this court is concerned. It alleges that Edward Hollister, the testator, died seized and possessed of one eighty acre water right out of canal No. 2 in Weld county, being the right annexed to the west half of the northeast quarter of section 20, and that respondent claimed some right or interest therein adverse to the peti-tioner, but that the claim was without any right or basis for support.

The petition further charges that for a series of six years the respondent wrongfully made use of the water right to the damage of the petitioner in the sum of $1,200, and the prayer was that the respondent be ordered to set forth the nature of his claim, and that, upon final hearing, the water right be decreed to be in petitioner, and for damages for its use, and that the respondent has no interest therein.

In the answer of respondent it appears that this water right, along with certain lands and certain other water rights belonging to Hollister, were by him in 1883 conveyed to the Colorado Loan and Trust Company, as trustee, to secure the payment of his note to the Travelers Insurance Company in the sum of $15,000 ; and it is charged in the answer that, on account of default in the payment of the note, the trust deed was duly foreclosed, and at the foreclosure sale all of the property described in the trust deed, including this water right, was bought by the respondent, and that he now owns and has possession of the same.

It was further alleged that one Mary J. Packard claimed some interest in the water right adverse to both the petitioner and the respondent, and an order was asked that she be made a party. The order was granted, and Mrs. Packard came in, and by answer alleged that she was the sole heir at law of John H. Packard, her deceased husband, and that during his life-time the said water right was deeded to him through divers

mesne conveyances from Edward Hollister, and that at the time of filing her answer she was the owner and in possession of it.

Upon the issues there was a trial to the court without a jury, which made findings of fact in favor of the petitioner, and gave judgment against the respondent company in the sum of $150, and entered a decree establishing the petitioner's right and ownership of the water right in question.

The Travelers Insurance Company and the respondent Mary J. Packard sued out a writ of error in this court to the judgment; and afterwards Mrs. Packard sold to the company all of her right in the subject-matter of the litigation, and by an order of the court, entered with the consent of the petitioner, the Travelers Insurance Company alone prosecutes this writ of error.

Mr. CHARLES H. TOLL, Mr. D. V. BURNS and Mr. WILLIAM R. BARBOUR, for plaintiff in error.

Mr. JAMES C. SCOTT and Mr. J. E. GARRIGUES, for defendant in error.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

It will be observed that this is a controversy over what the parties call a "deeded" water right; that is, it passed from the original appropriator by a deed to Hollister. It would seem from some of the exhibits introduced in evidence that an arrangement existed between the canal company, the successor of the original appropriator, and a water right consumer under the canal that the latter might convey to the canal company his water right, and receive a certificate of stock representing his right to the use of water. Hollister, however, did not avail himself of this privilege.

If we should assume, with the defendant in error, that the legal title was in Hollister at his death, free from the lien of

any incumbrance, this action, in so far as its object was to get an adjudication of ownership, could not be maintained by the administrator. Under our decisions a water right is real estate, not personal property. *Wyatt v. Irrigation Co.*, 18 Colo. 298. Counsel do not controvert this proposition, but seek to convert this into an action to determine to which of the parties the canal company should issue the certificate of stock. Such is not the object of the action, but in form and substance the petition is one to quiet title to real estate, but there is not a word in it about stock certificates.

The water right being real estate, at once, upon his death, it passed to Hollister's heirs or devisees, subject only to the payment of his debts, and an action to quiet title, or to recover possession, does not lie at the instance of the administrator. For this reason alone the decree as entered must be reversed.

It was proper, however, for the administrator to sue for rents, and his right to a recovery depends upon the ownership of the principal thing out of which the rent issues, and, in this view, we must ascertain whose property the water right is.

There is no serious dispute as to the facts, and upon the vital point in the case practically none at all. In brief the facts are that this water right was included in a trust deed given by Hollister to the Colorado Loan and Trust Company, as trustee, to secure his note for $15,000 to the Travelers Insurance Company. All parties concede this, and so the court expressly found. After this note became due the company was pressing Hollister for payment, which he was unable to make. Having obtained a purchaser for a portion of the lands included in the trust deed, Hollister approached the agent of the company with the proposition that if the lands he desired to sell should be released from the lien of the trust deed, he would apply upon the company's note the cash payment that he was to receive from the sale, and the grantees would issue a new trust deed upon the land conveyed to them, as further security for the balance due on the company's note, after the application of the cash payment.

A release deed was executed, and the land released conveyed to the grantees, and thereafter title thereto was vested in John H. Packard, and it is through this conveyance that Mary J. Packard, as his heir, bases her claim.

The court found, as a matter of fact, that by this release deed there was withdrawn from the lien of the original trust deed the water right in controversy, and since thereafter no specific conveyance of the water right was made by Hollister, the conclusion of law was that it still belonged to his estate. This water right was used before and after Hollister's death in the irrigation of lands in section 21. It was never listed by the administrator as a part of the assets of the estate, and the administrator did not lay any claim thereto until a short time before the bringing of this suit, and it appears that the claim is based upon the construction given to the release deed by the attorney of the administrator.

The water right originally was, in the language of counsel, "located" upon the west half of the northeast quarter of section 20. This tract was released from the lien of the trust deed and conveyed by Hollister, as already noted. In conveying it Hollister did not include in his deed any reference to water rights, but in connection with the deed assigned to the purchaser twenty shares of stock of the canal company, which represented the quantity of water for irrigating the conveyed premises.

The defendant in error upon this rests his claim, and says that when Hollister assigned this certificate of stock his intention was that this "deeded" water right should not pass because, by transferring the certificate of stock representing the water right that was necessary for the lands, he thereby conclusively negatived an intention to convey any other or different water right.

Mrs. Packard's claim was that it passed to her, through mesne conveyances.

The plaintiff in error contends, although this deeded water right was originally located upon, or used in the irrigation of, lands in section 20, before Hollister's death and ever since

that time it was segregated from the land upon which it was originally located, and thereafter used in irrigating lands in section 21. This water right, it is said, was not released by the release deed, for the reason that before its execution the water was segregated from section 20, and applied to section 21, and section 21 was not released from the lien of the trust deed, and only such water rights were released as were necessary to irrigate the released lands.

Hollister, when he came to convey the lands in section 20, did not in his deed in terms include any water right, but by a separate instrument transferred twenty shares of the stock which he owned, and this evidenced his understanding of what water right had been, and was then, used in irrigating the lands which he sold.

Whether or not a water right passes in a deed conveying lands, without any specific mention of the right, depends upon the intention of the grantor, which is to be gathered from the express terms of the deed, and, if that is silent, from the presumptions arising from circumstances surrounding the transaction. *Arnett v. Linhart et al.*, 21 Colo. 188; *Frank v. Hicks*, 4 Wyo. 502; *Gelwicks v. Todd*, 24 Colo. 494.

The same rule of construction, of course, should apply to a release deed. Whether this water right was released by the release deed must be gathered from the surrounding circumstances, as the deed itself is silent. It releases only such water rights as were used in connection with the land released. If the "deeded" water right was not then used in irrigating any lands released, it was not released. It is uncontroverted, as we read the record, that the water right in question, previous to the execution of the release deed, had been segregated from lands in section 20. Certain it is that from the date of the release deed, as well as prior thereto, it was exclusively used upon lands in section 21, and from that time continuously till a short time before the beginning of this action had been continued to be so applied. Hollister, by transferring twenty shares of water stock to the purchasers of the land released thereby, manifested his understanding

that the water right represented by the stock was the water right that was used in irrigating the conveyed premises situate in section 20. Besides this, it is not reasonable to suppose that the insurance company, clamoring for the payment of its note, would, without any consideration, diminish its security by releasing a water right for eighty acres of land which the testimony in this case shows was the value of at least $2,000.

Taking all these circumstances into consideration, we are clearly of the opinion that this water right was not released, nor was it intended to·be released, and, upon the contrary, that it remained subject to the lien of the trust deed, and at the foreclosure sale was bought by the Travelers Insurance Company. It follows from this that the petitioner was not entitled to recover anything against the insurance company for its use and enjoyment of the water right.

The errors of the trial court were doubtless due to the unsound conclusions of law it reached, as is clear from the findings and opinion brought up in the record. It appears therefrom that the court found that Hollister had the right to relocate the water right upon lands in section 21, and finds specifically that it was used in irrigating them for at least six years before this action was begun; but he does not regard it as conclusive evidence that Hollister intended such a relocation. Upon this question the language of the court is as follows: "Had Mr. Hollister lived, and a similar status of affairs taken place between himself and The Travelers Insurance Company, I would not question but what the said Hollister would be estopped to deny a relocation of said water right and a possible conveyance to The Travelers Insurance Company under the terms of its contract as pertains to section 21." But because of Hollister's death the court in some way concludes that it is more reasonable to suppose that there was intended a relocation of the water right upon some lands other than those in sections 20 and 21.

The court also found as a conclusion of law that this water right could not pass as an appurtenant to the land, but must

be conveyed by a proper deed. The court also held that a water right is personal property. The conclusions of law upon which the court seemed to proceed are contrary to express adjudications of this court, and why Hollister's estate could not be estopped to deny a relocation of the water right upon the lands of section 21, when Hollister himself would be estopped, had he lived, we are unable to perceive.

As the heirs or devisees are not parties to this action, we cannot give full relief, and order a decree to be entered establishing and confirming the title of the insurance company to this water right. The judgment and decree, however, will be reversed, and the cause remanded with instructions to dismiss the petition.

*Reversed.*