# SEPTEMBER TERM 1901.

[No. 4044.]

## KING v. ACKROYD.

1. **WATER RIGHTS—CONTRACTS—NOTICE—INNOCENT PURCHASER.**

Secret trusts or equities in land antagonistic to the title as disclosed by the record, do not bind a *bona fide* purchaser without notice. And where a party by a quit-claim deed conveyed all his right to the prior use of certain water for irrigation and at the same time by a separate contract the use of the water was limited to a certain tract of land and when not so used was to revert to the grantor, a purchaser from the grantee without notice of the separate contract was not bound by the limitation and the grantor being a junior appropriator of the water the fact that he constructed ditches and made preparation for the use of the water was no notice to the purchaser of the limitation.

2. **WATER RIGHTS—CONVEYANCE—APPURTENANCE.**

Where a water right is used in irrigating land it will pass with a conveyance of the land under the word appurtenances without any specific conveyance or description in the deed, where it appears that it was the intention of the grantor that it should pass.

3. **WATER RIGHTS—TRANSFER OF USE TO OTHER LANDS.**

Where a party conveyed a priority of right to the use of water he retaining the rights of a junior appropriator and the land originally irrigated by his grantee with the water conveyed became saturated and boggy so that the water could no longer be used thereon with profit, the grantee or his successor in title could transfer the use of the water to other lands or could transfer it to other persons to be used in irrigating their lands in exchange for water from another ditch, if by the transfer or exchange no more water was used than was originally used and no other right of the junior appropriator was injuriosly affected.

*Appeal from the District Court of Weld County.*

This action was brought by Laura King, as plaintiff (appellant here) against Amos Ackroyd, defendant (appellee), to obtain a decree quieting her title to the waste and seepage water collecting in what is designated in the record the "Ackroyd draw", and to restrain the defendant from interfering with plaintiff's use of such water for irrigating her lands.

In the year 1888 Amos Ackroyd was the owner of the south half of the south half of section 30 in township 7 north, range 66 west in Weld county, and also of a part of the southwest quarter of section 32 in the same township. Robert H. Haythorn was the owner of the northwest quarter of section 32. Upon Ackroyd's lands in section 30 there was a large draw called the "west" or "Ackroyd draw" and another and smaller one known as the "little east draw". In these depressions accumulated a considerable quantity of surface and flood water from its tributary water shed and seepage and water from the Larimer and Weld canal lying above it. From the main or "west draw" water was diverted through the Daisy ditch, owned in part by Haythorn and used for irrigating his lands in section 32. A controversy arose between Ackroyd and Haythorn respecting the priority of right to the use of water collected in, and carried from, this draw. To determine it Haythorn brought an action against Ackroyd in the district court of Weld county. It was adjusted out of court. The terms of the settlement are now in dispute and give rise to the pending action.

The plaintiff Mrs. King claims that in this settlement Ackroyd acknowledged that her grantor Haythorn had the absolute priority of right to the use of all the water that collects in the draw above the headgate of the Daisy ditch, and by his unqualified quit-claim deed conveyed the same to Haythorn, in consideration of which the latter deeded to the former a twenty acre tract of land situate in the southwest quarter of section 32. Ackroyd's

deed, in the granting clause, reads:

"All my right, title and interest, claim or demand that I now have to all seepage or waste water flowing from or over the south half of the south half of 30-7-66 west, in Weld County, Colorado, either by virtue of a prior appropriation of same or by virtue of being the owner of above described land.

"Together with the right of way over and upon the above described land, or so much of same as may be necessary to construct ditches, laterals, drains, that may be necessary from time to time to appropriate all the seepage or waste water on the above described land.

"Saving and excepting all grantor's interest in and to the little east draw, that bears a little east of north from the point where said draw intersects the large main draw, together with all seepage or waste water that may flow from or over, through or in said draw. And the grantor herein reserves the right to use said above draw as he may see fit for any purpose whatsoever."

The several defenses interposed may thus be summarized:

Defendant admits the existence of the dispute between him and Haythorn, the bringing of the action to adjudicate the question of the priority, the settlement of the same out of court, and the execution of the quit-claim deed by him to Haythorn; but says that that deed is but a part of the entire contract by which Haythorn and he amicably settled their differences. He alleges and the same is admitted by plaintiff, that on the same day that this quit-claim deed was executed and delivered, the following writing was signed by them:

"Greeley, Colo., August 7, 1888.

"It is hereby agreed by and between us, Amos Ackroyd and Robert Haythorn, that from this date until January 1, 1889, that we shall use the seepage or waste water that flows from or over the south one-half section thirty, township seven north, range sixty-six west, each to use three days alternately.

Robert M. Haythorn,

Amos Ackroyd."

Defendant further alleges that, at the same time, and as part of one continuous transaction, another instrument was executed by them which has been lost (and, over the objection of plaintiff, he was permitted to give evidence of its contents) and, according to his contention, that agreement, as testified to by him at the trial, in substance was: "That contract specified that he (Haythorn) was to have the first use of the water for the northwest quarter of section 32, on which the Daisy ditch was, and when he did not use the water there, it was to go back to me free of all demands. The only dispute between Haythorn and me was whether he was to have the first use of the water or whether I was. That contract settled it, he was to have the first, and I the second." The defendant maintains that he also pleaded in' his answer an abandonment by the plaintiff, and a subsequent appropriation by the defendant, so that the latter has become, by virtue of such abandonment and subsequent appropriation, the prior appropriator of the waters collected in the draw as against the plaintiff, except as to a small quantity sufficient to irrigate two or three acres belonging to plaintiff, situate in the southwest corner of her quarter section.

In the trial to the court without a jury a general finding of facts was made in favor of defendant, and a further specific finding that he is entitled to all of the seepage waste and flood waters collected in the Ackroyd channel or draw, except as to the quantity necessary for the irrigation of the three acres just mentioned. There was a further finding that the "seep" ditch constructed by the plaintiff in the year 1893 operates as a trespass upon the rights of defendant. Upon these findings a decree was entered quieting title in Ackroyd and adjudging him the prior appropriator of the waters in the draw in accordance with the findings just referred to, and the seep ditch was abated. It is to reverse this decree that the plaintiff brings the case here on appeal, and the grounds upon which she relies for a reversal

are separately considered in the opinion.

Mr. H. N. HAYNES and Mr. C. F. TEW for appellant.

Mr. JAMES W. MCCREERY for appellee.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

1. The decree is radically wrong. The evidence does not sustain it and the law condemns it. Some of the objections urged by appellant against the rulings of the trial court need not be considered. If it be conceded that the necessary ground was laid for the introduction of oral evidence of the contents of the alleged lost writing, and the secondary evidence admitted by the trial court established the same with the necessary certainty and clearness, and that, if the controversy was one between Ackroyd and Haythorn, the original parties, their rights would be limited, or measured by it,—still the plaintiff in this case is not bound by it. It is a familiar rule that secret trusts or equities in land antagonistic to the title, as disclosed by the record, do not bind a *bona fide* purchaser. In the pleadings there is no allegation, and in the proof no evidence, that Sherman J. King, the husband of the plaintiff and the immediate grantee of Haythorn, or the plaintiff herself, had notice, or knowledge of facts equivalent to notice, at the time they received their conveyances, that there existed a secret equity in this water, evidenced by the missing writing, or otherwise, and which is now asserted by defendant.

2. But it is claimed by defendant that ever since the execution of the quit-claim deed, he has not only asserted the right, but, when not interfered with by plaintiff and her grantors, has actually used for irrigating his lands the water of the Ackroyd draw. He further says that some time after the execution of the deed he constructed a number of ditches and laterals and other appliances upon his land adjoining the premises of plain-

tiff for the purpose of utilizing the water which he claimed, and because of these physical demonstrations, of which plaintiff at the time was aware, and some of which were made before her acquisition of title, she is charged with notice of the secret trust.

Since the parties themselves agree as to the effect of the granting words of the quit-claim deed, it is not necessary in this case to determine whether the title to the water thus conveyed is greater than, or the same as, an appropriator of water from a natural stream gets under the laws of this state; for plaintiff admits what defendant asserts, that the rights which she acquired are only those of a prior appropriator. And while they differ as to the place where plaintiff is to make beneficial use of the water, and as to the circumstances in which her priority ceases,— which difference grows out of their controversy as to the existence and binding force of the lost writing,—yet, at least, they do agree, if their respective rights are measured solely by the quit-claim deed, that when she has no use for the water in irrigating her lands it is her duty to allow it to flow down the natural channel to be utilized by the defendant as a junior appropriator.

Such being the theory of both parties, it is apparent that whatever physical demonstrations were made by defendant in the way of building ditches and constructing other appliances upon his lands with a view to utilize water, were properly understood by plaintiff as manifestations of an intention to utilize only what she admits belongs to him, viz., the rights of a junior appropriator, and not such as conflicts with the superior rights which the record shows were vested in her. We are clearly of opinion from the uncontradicted evidence in the case that the plaintiff had neither actual nor constructive notice of the alleged secret equity of defendant until long after she acquired title. So that whatever rights, if any, Ackroyd may have had against Haythorn, his immediate grantee, to the use of water collected

in the Ackroyd draw, he had none whatever as against the plaintiff at the time she took title, except such as a subsequent appropriator may assert.

3.   If the defence of an abandonment by plaintiff was well pleaded by defendant, the evidence signally fails to establish the defense.   There is not a particle of evidence that plaintiff or her grantors, ever intended to abandon these rights, nor are there any acts of non-user by her which amount to anything in the light of the evidence.

4.   But it is said that plaintiff is not in a position to urge any objection against the secret equity pleaded by the defendant, for in the conveyance to her made by her husband the water rights and interests in the ditches through which they were enjoyed were not conveyed; nor was there any specific description of these water rights in the deed from Haythorn to Sherman J. King.   The evidence is clear to the point that Haythorn, in conveying these lands to Sherman J. King, intended to transfer with them as an appurtenance, the water rights in question, and the same is true of the intentions of Sherman J. King when he conveyed the same premises to his wife.   A water right which is used in irrigating lands may pass as a grant of the lands themselves, under the word "appurtenances", if such was the intention of the grantor, and of this intention there is not the shadow of a doubt in this case; so that Mrs. King is in a position to interpose the same objections that Haythorn could, were he a party plaintiff.   *Insurance Co. v. Childs,* 25 Colo. 360, and cases cited.

5.   The claim that under the missing instrument plaintiff's use of water was confined exclusively to the irrigation of the particular tract of land in the northwest quarter of section 32, for the irrigation of which the appropriation was originally made, and none other, falls under our decision that plaintiff, not being charged with knowledge of its contents, is not bound by it.

6.   The same ruling also disposes of the contention of de-

fendant that he was injured by plaintiff's construction of the so-called seep ditch after she acquired title and the diverting of water from this draw there through to be used by other parties than the plaintiff for irrigating their lands. As a matter of fact, this ditch was constructed because plaintiff was unable longer profitably to irrigate her lands situate in the northwest quarter of section 32, and lying under the Daisy ditch, because they had become badly seeped. And the Daisy ditch was abandoned as a carrier of this particular water, and the seep ditch used instead, and the water carried thereby was exchanged by plaintiff with owners of other lands lying under the seep ditch for water to which they were entitled from the Larimer and Weld Canal, and which they gave in exchange to the plaintiff for the irrigation of certain of her lands in section 32 which could not be irrigated either from the Daisy or seep ditch. This resulted in no injury to defendant, for in the exchange no more water was utilized from the Ackroyd draw than was theretofore beneficially applied, and defendant's rights as a junior were not otherwise injuriously affected.

Like disposition is made of the further, indeed part of the same, contention of defendant that, by reason of the non-necessity of water to irrigate the seeped land of plaintiff, which condition arose after the sale by Ackroyd of these water rights, the quantity necessary for the proper irrigation of plaintiff's land in section 32 was lessened, and that by reason thereof, and the subsequent use and appropriation of them by the defendant, now constitutes him a prior appropriator.

Plaintiff had the right to change the place of the use from her "seeped" lands to other lands owned by her or other parties, provided in making the change the rights of junior appropriators were not injuriously affected; and, as already said, since thereafter no greater quantity was used than theretofore, and no other right of the defendant was injuriously affected, the latte may not complain.

With the missing instrument out of the case, which, as to plaintiff, is as if it was never executed, it is clear that whatever rights defendant has in water that collects in the Ackroyd draw above the head of the Daisy or seep ditch, they are junior and subordinate to the rights of plaintiff, and there is no showing that his rights as a junior appropriator have been infringed by the plaintiff in the slightest degree. This determination also disposes of the finding of the trial court that the construction of the seep ditch was a private nuisance which defendant was entitled to have abated.

The decree of the lower court is reversed and the cause remanded with instructions to that tribunal to set it aside and to render a decree as of the date of the former one constituting plaintiff the prior appropriator of the waters in the Ackroyd draw, in accordance with the prayer of her complaint, and restraining defendant from interfering with the prior use of such waters to the extent of the amount necessary to irrigate her lands.

*Reversed.*