[No. 5075.]
[No. 2641 C. A.]

# THE OLIGARCHY DITCH COMPANY ET AL. V. THE FARM INVESTMENT COMPANY.

1. **Water Rights—Irrigation Companies—Transfer of Stock— Trust Deed Operating as Chattel Mortgage—Validity.**

Even though a deed of trust conveying stock in an irrigation company should operate as a chattel mortgage and should not be foreclosed within five years, still it would be good as between the parties, and the company could not question its validity without showing that it was in some way injured or prejudiced.—P. 295.

2. **Same—Transfer of Stock to Trustee.**

Stock in an irrigation company was transferred to a trustee under a trust deed, and by him surrendered to the company in exchange for a new certificate issued to him as trustee. The deed was foreclosed and the stock sold at trustee's sale, and later another trust deed was given to secure the payment of the purchase price, in which the same person was named as trustee. Held, that no further transfer on the books of the company was necessary to entitle the purchaser to the rights of a stockholder.—P. 295.

3. **Pleading—Title to Corporate Stock—Proof—Variance.**

Where, in an action to compel an irrigation company to deliver water to an alleged stockholder, the ultimate fact in issue was the title to the stock, any variance between the pleading and the proof as to the means by which the title was acquired is immaterial.—P. 296.

4. **Water Rights — Irrigation . Companies — Shares of Stock— Transfer by Deed—Connecting Ditches—Rights of Stockholders.**

An irrigation company owned the main ditch and a water right, and another company owned an extension thereof in which only its own stockholders were entitled to "carry" water. The land of one owning stock in both companies was sold under a trust deed and with it, in express terms, the stock of the company owning the main ditch. Held, that the purchaser obtained no rights in the extension ditch by the additional clause in the deed "together with all the rights to the use of water for irrigating said premises and for domestic use thereon to which the party of the first part or the premises hereby conveyed are now or may hereafter become entitled," since such right de-

pended upon the ownership of the stock thereof which still remained in the name of the original owner.—P. 297.

**5. . Same—Equitable Relief—Necessary Parties.**

The land of an owner of stock in an irrigating ditch company was sold under a trust deed, which the purchaser claimed included the interest in the ditch, but the stock was not transferred and remained in the possession of a third person. Held, that, in an action against the ditch company by the purchaser of the land to enforce his alleged rights in the ditch, the original owner and the third person were necessary parties.—P. 297.

*Appeal from the District Court of Boulder County. Hon. Christian A. Bennett, Judge.*

Action by The Farm Investment Company against The Oligarchy Ditch Company and The Oligarchy Extension Ditch Company. From a judgment for plaintiff, defendants appeal.

*Reversed and remanded.*

Mr. H. M. MINOR, for appellants.

Messrs. ROGERS, SHAFROTH & GREGG, for appellee.

Mr. JUSTICE BAILEY delivered the opinion of the court:

The Oligarchy Ditch Company, a corporation, was the owner of a ditch with an appropriation of water attached thereto. The water diverted by the ditch was divided among the stockholders *pro rata*, according to the number of shares owned by each.

In the year 1871 there was constructed a lateral extending from the end of the main ditch to lands of stockholders lying beyond the terminus of the old ditch. This lateral had the effect of being an extension of the Oligarchy ditch. It had no appropriation of water, but was constructed for and used simply as a conduit to carry that part of the appropriation of the old ditch to which the stockholders aiding in

its construction and whose lands lay beyond the terminus were entitled.

These stockholders formed a corporation called "The Oligarchy Extension Ditch Company." The stock in the extension company did not represent independent water rights, but the right to carry water obtained from the Oligarchy ditch. The company did not carry water for hire, but only carried the water of its stockholders obtained by them from the old ditch. It did not carry any water for the stockholders in the Oligarchy ditch who did not own stock in the extension company. One owning three shares of stock in the extension company could carry the water obtained upon two shares of the Oligarchy company.

Some of the stockholders in the extension company owned a greater proportion of the Oligarchy stock than they did of the extension stock, but they were permitted to take no more water from the extension ditch than the stock in the extension company entitled them to carry. Other stockholders in the Oligarchy company owned no lands under the original ditch, but they owned lands under the extension. However, inasmuch as they owned no stock in the extension, they received no water on account of their Oligarchy stock.

Mary Marshall owned a tract of land under the extension ditch and shares of stock in each company. She borrowed money from the Middlesex Banking Company, and to secure the payment of it executed her promissory note and a deed of trust to Lucian H. Richardson, trustee, conveying the real estate, "and five and one-half shares of stock in The Oligarchy Ditch Company, used for obtaining water for the irrigation of said land, together with all the rights to the use of water for irrigating said premises and for domestic use thereon, to which the party

of the first part or the premises hereby conveyed are now or may hereafter become entitled, however the same may be evidenced, and together with all shares of stock or shares of water in any ditch or irrigation company which in any manner entitle said party of the first part to water for irrigating or for domestic purposes upon said premises.'' The certificate for five and one-half shares of the capital stock of The Oligarchy Ditch Company was also assigned to Richardson as trustee for the Middlesex Banking Company, and by him surrendered to the ditch company, which issued a new certificate to him as such trustee.

Subsequently, Mrs. Marshall having made default in the payment of the note, the trust deed was foreclosed and the property and ditch stock were sold at trustee's sale and bid in by the Middlesex Banking Company, and by it subsequently sold to appellee, which company, to secure the payment of the purchase money, executed its trust deed to Richardson as trustee, the certificate of stock remaining in Richardson's hands in the same condition as when issued after the execution of the Marshall trust deed, there being nothing on the books of the Oligarchy company to show that appellee had any interest in the stock.

Appellee, failing to obtain water from the Oligarchy ditch to irrigate the land, brought this action against the two companies to restrain the Oligarchy company from delivering water due upon the five and one-half shares of stock to any person other than appellee, and to restrain the extension company from interfering with the delivery of the water to plaintiff and its lands. In other words, it was sought to compel the Oligarchy company to deliver the water to the extension ditch and to compel the

extension company to carry and deliver it to appellee's lands.

In the spring of 1898 the court made a temporary restraining order in compliance with the prayer of the complaint, but ordered plaintiff to pay the extension company eighty dollars to pay for the use of the ditch during the year 1898. In 1901 this injunction was made permanent and appellee was required to pay the extension company two hundred dollars for the right to carry the water, and also an amount equal to what the assessments would have been for the years 1898 and 1901 inclusive, less the amount to be paid pursuant to the order made in 1898.

The first contention made by appellant is that appellee failed to show that it was the owner of any stock in the Oligarchy company, because the stock is personal property and the deed of trust operated as a chattel mortgage and was not foreclosed within five years; that it was void after that period.

We will suppose, for the sake of the argument, that a deed of trust attempting to convey stock in a corporation operates as a chattel mortgage, still it would be good after the statutory period as between the parties (*Hall v. Johnson,* 21 Colo. 418) or against any other person who did not have superior rights. The corporation could not question the validity of the transaction in the absence of a showing that it was in some way injured or prejudiced.

In this case, however, the certificate was absolutely transferred to Richardson as trustee, by him surrendered to the company, and a new certificate issued. Everything was done that could be done by the parties to transfer the stock. On the transfer of the property to plaintiff, Richardson continued to remain as trustee. The legal title to the stock remained in him. There was simply a change in the

parties who had the right to redeem. There being no change in the legal title, a further transfer was unnecessary.—*Richardson et al. v. Longmont Supply Ditch Co.,* 19 Colo. App. 483.

Appellee was entitled to the water to be delivered upon the shares in the Oligarchy company so far as that company was concerned. In this respect we do not see any substantial variance between the pleadings and the proof. The ultimate fact in issue was the title to the stock, and the variance, if any there was, was as to the means by which the title was acquired, and this is immaterial.

As to the extension company, more difficult questions are presented. It is not contended that there was any assignment, delivery, surrender, cancellation, or reissue of the certificate of the extension stock, or that it was transferred upon the books of the company to the trustee. The only thing relied upon is the clause of the trust deed hereinbefore quoted, by which all other water rights are attempted to be conveyed, and the further fact that the extension ditch had been used to carry this water for more than twenty years.

It is sufficient to say that, previous to the foreclosure sale, Mrs. Marshall's right to carry water in the extension ditch was based upon her ownership of stock in that company. Under the rules of the company, when the ownership of stock ceased, the right to carry water ceased.

Plaintiff and its grantors failed to secure that stock, so that the right can no longer be based upon it. The foundation for its existence having been destroyed, the right itself no longer exists. Mrs. Marshall's right to carry the water having been dependent upon her ownership of the stock, and plaintiff failing to secure this, the right cannot be said to have been transferred to it. While there are many

cases which hold that a water right or a private ditch may pass with a conveyance of land as appurtenant thereto, yet we know of no case, and counsel has called our attention to none, wherein it is held that a corporation owning a ditch, and furnishing the right to carry water to its stockholders only, must continue to carry water for land which has been conveyed to a stranger, while the stock which gave the right remained in the hands of the original owner or had been transferred to other parties.

The cases which determine that the water right does or does not go with the land are actions between the parties to the conveyance.—*Frank v. Hicks,* 35 Pac. (Wyo.) 475; *Arnett v. Linhart,* 21 Colo. 188; *Gelwicks v. Todd,* 24 Colo. 494; *Travelers' Ins. Co. v. Childs,* 25 Colo. 360; *Daum v. Conley,* 27 Colo. 56.

But here it is sought to make the corporation carry the water because it is said that it was the intention of Mrs. Marshall that it should, although Mrs. Marshall is permitted to retain the legal title to the stock by virtue of which the duty exists. If Mrs. Marshall intended to convey the stock and did not, then she should be compelled to do so. The grantee cannot go to a third party and require it to do that which it is contended Mrs. Marshall intended to do. If the stock is in the hands of Mr. Ure, which seems to be the drift of Richardson's testimony, the corporation cannot be compelled to relieve the plaintiff from a situation brought about by its own negligence.

To obtain the relief that appellee desires, Mrs. Marshall and Ure, if he has the possession of this stock, are necessary parties. If they are not made parties and the extension company is compelled to carry this water for appellee because the rights which go with the ownership of the stock have been

exercised for the carrying of water to this particular land, then the company may still be required to carry water by virtue of this stock for the party actually holding it. Mrs. Marshall and Ure, not being parties to this action, cannot be bound by the decree, and the company may find itself compelled to carry water to two parties because of the one issuance of stock. It is immaterial to the ditch company whether it carries the water for appellee or Ure, but it cannot be compelled to carry it for both on the same stock. In order to avoid that, it should be de-. termined what are the equities between the parties claiming the right. If the plaintiff desires to utilize this capacity simply because it exists, then it must proceed in a proper way to secure such right. The existence of the capacity does not tend to prove the sale of the stock by Mrs. Marshall to plaintiff, nor does it prove plaintiff's right to carry water in the ditch. That right had theretofore been exercised by Mrs. Marshall because of the ownership of the stock.

Appellee's right to utilize the extension of the ditch for the carriage of its water under the issues presented in this case must rest upon its equitable right to the stock, if it has any equitable interest therein, and this cannot be determined without those holding the certificates having been made parties.

The judgment of the district court will therefore be reversed, and the cause remanded, with direction that, if the appellee desires to proceed further, it may do so by making Mrs. Marshall and David M. Ure, or their grantees, parties.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GODDARD concur.