No. 20290.

STATE OF COLORADO, ET AL. *v.*
CAROLINA POSTERARO LIONELLO, ET AL.
(401 P.2d 593)

Decided May 3, 1965.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, JOHN B. BARNARD, JR., Special Assistant, for plaintiffs in error.

BOYLE & WITTY, for defendant in error.

*In Department.*

Opinion by Mr. Justice Moore.

This cause originated in the district court of Chaffee county upon the filing of a complaint by Emelio Lionello and Carolina Posteraro Lionello as plaintiffs, against sixteen named persons and "all unknown persons who claim any interest in the subject matter of this motion," as defendants.

The Lionellos sought a decree quieting their title to the Donnell Reservoir No. 1 and the Donnell Reservoir No. 2 in Chaffee county, Colorado, and the water rights decreed thereto. No appearance was entered on behalf of any of the defendants who were named in the plaintiffs' complaint, and the defaults of all defendants were duly entered.

The action was commenced on August 4, 1954. On December 29, 1954, the Attorney General, on the requirement of the Governor of the State of Colorado, filed a motion to intervene on behalf of the State of Colorado. He tendered with said motion an answer to the plaintiffs' complaint and a counterclaim, the prayer of which was:

"* * * for a decree quieting the title of intervenor in and to the reservoirs and the water rights decreed thereto, and adjudging the intervenor to be the owner in fee simple and entitled to possession of the reservoirs and the water rights decreed as above described. * * *"

On the 29th day of December, 1954, the Board of County Commissioners of Chaffee county filed a motion to intervene and tendered an answer to the plaintiffs' complaint. The two petitions for intervention were granted and the issues heard and determined by the trial court were framed by the pleadings as between the plaintiffs and the intervenors.

During the pendency of the action Emelio Lionello died and his heirs-at-law were substituted as plaintiffs in the action. They now appear in this court as defendants. We will hereafter refer to the parties as they appeared in the trial court.

The trial began on December 8, 1960, and was concluded the following day, at which time the matter was taken under advisement. On March 15, 1962, detailed Findings of Fact and Conclusions of Law were entered by the trial court, in which the issues were found in favor of the plaintiffs and against the intervenors. A formal decree was signed on March 22, 1962, quieting the title of plaintiffs as to any claims of all named defendants, and as to the claims of the intervenors in and to the Donnell Reservoir ·No. 1 and the Donnell Reservoir No. 2, and "* * * to the first 108 acre feet of the waters decreed thereto." The intervenors are here on writ of error seeking reversal of that judgment.

The facts which are essential to an understanding of this controversy extend over a period of more than half a century. The Donnell Reservoirs Nos. 1 and 2 were located, filed upon, and constructed by one H. C. Donnell, commencing on or about July 19, 1889. On June 19, 1890, the district court of Chaffee county entered decrees awarding the Donnell Reservoir No. 1 Priority No. 1 as of July 19, 1889, for an indeterminate amount of water, based upon an inflow in the amount of four cubic feet of water per second of time. Apparently, the Donnell Reservoir No. 1 was constructed by raising the level of a natural lake known as Boss Lake. At the same time, the district court awarded to H. C. Donnell, for the Donnell Reservoir No. 2, Priority No. 2, from the Lake Fork of the South Arkansas river, which reservoir had a capacity of 4,704,490 cubic feet of water, or 108 acre feet. This priority dated from July 19, 1889. The water appropriated by the Donnell Reservoirs Nos. 1 and 2 was appropriated for the irrigation of the G. W. Wyatt ranch, for which a patent was issued by the United States to Wyatt on March 25, 1890, and which, on February 4, 1892, was conveyed to Henry C. Donnell, together "with all accrued water rights and ditches belonging to or used upon the above described land."

On April 19, 1892, Henry C. Donnell executed and delivered to Henry J. Aldrich, as trustee for Colorado Securities Company, a deed of trust conveying the Wyatt ranch "together with all and singular the tenements, hereditaments, privileges and appurtenances thereunto belonging, or in any wise appertaining, including all water rights and privileges, ditch or ditches, thereunto belonging." On April 22, 1892, the Colorado Securities Company assigned its deed of trust to Esther B. Steele. Thereafter, on April 10, 1897, Thomas B. Hood, as substituted trustee, under his power of sale, sold the real estate to Esther B. Steele. This trustee's deed did not specifically mention any water or water rights. It did, however, contain the pertinent language to the effect that the trustee conveyed to Esther B. Steele "* * * all the right, title and interest, as well in law as in equity, which the said party of the first part (the trustee) hath acquired by virtue of the trust deed above mentioned" in and to the real estate described therein, which was the land known as the Wyatt ranch upon which the water involved in this controversy was originally put to beneficial use by Henry C. Donnell upon completion by him of the said reservoirs. The trustee's deed further conveyed "all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversions, remainders, rents, issues and profits thereof; and also all the estate, right, title, interest, claims and demand, as well in law as in equity, of the said party of the first part, of, in and to the same, and any and every part thereof, with the appurtenances which the said party of the first part acquired by virtue of said trust deed; and all the right, title, benefit, and equity of redemption of the said Henry C. Donnell, his heirs and assigns therein."

The plaintiffs in this action are the successors in interest of all the title and rights of property acquired by Esther B. Steele under said trustee's deed. In addition thereto, on June 14, 1935, Thomas H. Hood (the substi-

tute trustee who executed the trustee's deed hereinabove mentioned) executed and delivered to the plaintiffs a "correction trustee's deed" by which he conveyed all "water rights and privileges, ditches or ditch rights, reservoir or reservoir rights to said lands belonging or in any wise appertaining." The plaintiffs based their claim upon the foregoing facts.

Other transactions between one or more of the defendants against whom defaults were taken need not be now considered for the reason that they are not material to any issue as between the plaintiffs and the intervenors.

We now consider the contentions of the intervenors and the factual situation upon which they base their claims. On July 12, 1894, pursuant to an act of the Eighth General Assembly authorizing the construction of a public reservoir in Chaffee county on the South Arkansas river, the then state engineer filed a statement of claim for a reservoir located on Boss Lake, on the east half of the northeast quarter of Section 29, in Township 50 North, Range 6 East of the New Mexico Principal Meridian, known as "State Reservoir, Boss Lake," having a capacity of thirty million cubic feet of water. This reservoir was an enlargement of the Donnell Reservoirs Nos. 1 and 2, and apparently covered the smaller reservoirs completely when filled. Apparently, work was commenced on the State Reservoir, Boss Lake, on May 20, 1893, and, apparently, storage commenced the following year. It does not appear that any decree has ever been granted to this reservoir.

The intervenors did not produce any agreement or conveyance from Donnell to the State of Colorado, nor did the state establish that the reservoir site was acquired by exercise of the power of eminent domain. It appears that the transactions between Donnell and the state, if any, occurred subsequent to the execution and delivery of the deed of trust from Donnell to Aldrich dated April 19, 1892. The Colorado Securities Com-

pany, its trustees, or those claiming under it, including the plaintiffs, cannot be bound by any statements or admissions of Donnell made subsequent to April 19, 1892, with reference to his transactions with the state relating to the Donnell Reservoirs Nos. 1 and 2.

It is apparent that the State Reservoir, Boss Lake, was an enlargement of the Donnell Reservoirs Nos. 1 and 2. It is equally apparent that the state did not assert any interest adverse to Donnell or those claiming under him until just prior to the commencement of this action.

The findings of the trial court contain the following pertinent language which has abundant support in the record:

"* * * Until the occurrence of the circumstances giving rise to this controversy, the State, the Board of County Commissioners of Chaffee county and the plaintiffs and their predecessors in interest enjoyed the water impounded in the so-called Boss Lake according to their respective interests therein, in complete harmony. Even during the period when this controversy was going on, the State Engineer recognized the rights of the plaintiffs to the first 108 acre feet of water stored in Boss Lake and never at any time asserted any adverse or hostile claim to the water, but contented himself with requiring the plaintiffs to install proper measuring devices so that their 108 acre feet of water could be accurately measured.

"There is no evidence that the Board of County Commissioners of Chaffee County ever asserted any interest in the first 108 acre feet of water decreed to the Donnell Reservoirs Nos. 1 and 2 adverse or hostile to the claims of the plaintiffs and their predecessors in interest or in any way interested itself in the controversy that has arisen in recent years.

"It appears that for some years the plaintiffs, the State Engineer and the various water commissioners have tacitly and sometimes expressly agreed that the

plaintiffs were entitled to the first 108 acre feet of water impounded in Boss Lake Reservoir. Apparently this relates to the priority decreed to Donnell Reservoir No. 2 since it is impossible to determine the number of acre feet decreed to the Donnell Reservoir No. 1. However, since the appropriation priority date of both reservoirs is the same, that is, July 19, 1889, it makes no difference from which appropriation priority the 108 acre feet is taken, and the intervenors are in no position to complain since it is evident that the plaintiffs have not claimed all of the water to which they might have been entitled. In view of the construction placed upon the situation by the parties, plaintiffs have limited themselves to the first 108 acre feet of water from these reservoirs, and since 1949 measuring devices have been installed so that their water may be accurately retained in the reservoir and released to them when needed. Under the statute the State is the owner of State Reservoir, Boss Lake, and the Board of County Commissioners of Chaffee County have, by statute, had imposed upon it the duty to operate and maintain the reservoir. Of course, this is subject to the right, title and interest of the plaintiffs arising out of their ownership of the Donnell Reservoirs Nos. 1 and 2 and the water appropriated thereby and decreed thereto, limited, of course, to 108 acre feet."

We hold that the deed of trust executed by Henry C. Donnell on April 19, 1892, conveyed to the trustee all of the water rights involved in this litigation. The trustee's deed to Esther B. Steele, under all the attendant circumstances of this case, operated as a sufficient conveyance of the water rights in question.

■■ In *Realty Co. v. Gest,* 70 Colo. 278, 201 Pac. 37, this court held that:

"It is recognized in this state that water may or may not be appurtenant to land. The provisions of the deed control, and if the deed be silent on the subject, then the intention of the parties is to be determined from all

the circumstances of the case, including the fact as to the use of the water and whether it is necessary and essential to the beneficial use and enjoyment of the land. *Bessemer Irr. Ditch Co. v. Woolley,* 32 Colo. 437, 76 Pac. 1053, 105 Am. St. Rep. 91; *Arnett v. Linhart,* 21 Colo. 188, 40 Pac. 355; *Insurance Co. v. Childs,* 25 Colo. 360, 54 Pac. 1020; *King v. Ackroyd,* 28 Colo. 488, 66 Pac. 906."

Specifically, this court in *Realty Co. v. Gest, supra,* quoted from *Bessemer Irr. Ditch Co. v. Woolley, supra,* as follows:

"Whether or not a water right used to irrigate land passes as an appurtenance to the land by a conveyance of the land which is silent as to the water right, depends upon the intention of the grantor which must be determined by the circumstances of the case and whether or not the water right is or is not incident and necessary to the beneficial enjoyment of the land, and in the absence of a showing of such intention such water right will be held not to pass as an appurtenance."

In the case at bar it is undisputed that the water rights involved were essential to the beneficial use and enjoyment of the land. Assuming, arguendo, that the trustee's deed was not sufficient in and of itself to convey the specific description of the water rights which it was the duty of the trustee to convey, he had a full right to correct the omission by execution and delivery of the "correction" trustee's deed. *Balfour-Guthrie Inv. Co. v. Woodworth,* (Calif.) 56 Pac. 891; *Brockman v. DiGiacomo,* 76 Colo. 428, 232 Pac. 670.

The judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE DAY concur.