501 P.2d 1337 (1972)
Hisashi KINOSHITA, Plaintiff, and
John DiTirro, Jr., Plaintiff-Appellant,
v.
NORTH DENVER BANK et al., Defendants-Appellees.
No. 71-114.
Colorado Court of Appeals, Div. I.
August 15, 1972.
Rehearing Denied September 6, 1972.
Certiorari Granted November 6, 1972.
*1338 Keith J. Vandenberge, Denver, for plaintiff-appellant.
Robinson, Robinson & Robinson, P. C., William H. Robinson, Jr., Lakewood, for defendants-appellees North Denver Bank, Connecticut Mutual Life Ins. Co.
Raymond J. Turner, Denver, for defendant-appellee Coal Ridge Ditch Co.
Gaunt, Dirrim & Coover, William W. Gaunt, Brighton, for defendant-appellee Lupton Meadows Ditch Co.
Selected for Official Publication.
COYTE, Judge.
This suit is a consolidation of two suits which involve the determination of ownership of 618 shares of the capital stock of the Lupton Meadows Ditch Company and 35 shares of the capital stock of the Coal Ridge Ditch Company.
One Murato owned a farm consisting of approximately 725 acres of land in Weld County, the above water stock, and also 20 units of water of the Northern Colorado Water Conservancy District. In 1966, Murato formed a corporation known as Murato Farms, Inc., and conveyed the real estate to the corporation by a warranty deed, which deed was properly recorded in Weld County, Colorado. The deed contained the legal description of the real estate and specifically described the water stock. Subsequently Murato Farms, Inc., obtained a loan from Connecticut Mutual Life Insurance Company, which loan Mr. Murato personally guaranteed. The water stock certificates in the two ditch companies had not been endorsed or transferred to the corporation. These stock certificates, representing the water in the Lupton Meadows Ditch Company and the Coal Ridge Ditch Company, were delivered to Connecticut Mutual Life Insurance Company with stock powers signed by Murato in blank attached to the water stock certificates. The deed of trust to Connecticut Mutual specifically stated:
". . . together with 618 shares in and of the Lupton Meadows Ditch Company; 35 shares in and of the Coal Ridge Ditch Company; and 20 shares in and of the Northern Colorado Water Conservancy District . . ."
These stock certificates with stock powers attached were held in their present form by Connecticut.
On February 6, 1968, Murato Farms, Inc., obtained a loan from the North Denver Bank and gave as security a second deed of trust on the Murato Farm and assignment of rents in favor of North Denver Bank. The deed of trust, in the description of the property conveyed to the public trustee, provided:
". . . together with all: rights-of-way, easements, reservoir, water and ditch rights and stock used in connection therewith or appurtenant thereto;. . ."
The note which the deed of trust secured was a collateral note, personally guaranteed by Murato. In connection with the execution of the note, there was delivered to North Denver Bank stock powers signed by Murato in blank.
The corporation defaulted on its loan from the North Denver Bank. Thereafter, at the request of the North Denver Bank, the public trustee served notice of election and demand for sale by public trustee, which did not describe or refer to any water stock or water rights in connection with the demand for sale. The public trustee's deed which was subsequently issued to the North Denver Bank (the purchaser at the foreclosure sale) made no reference to the water rights or water stock, except to state:
". . . conveys to the said purchasers, its successors and assigns forever, all the right, title and interest which the Public Trustee acquired pursuant to said deed of trust in and to the following described property situate in the County of Weld, State of Colorado, to-wit: . . ."
Thereafter, Murato assigned his interest in the water stock to plaintiff Kinoshita by delivering to him executed stock powers. Kinoshita, in turn, subsequently assigned his interest in the stock to plaintiff DiTirro by executing stock powers to him. *1339 The certificates were in possession of Connecticut Mutual from the time of closing its loan until sent to North Denver Bank after the bank had obtained the public trustee's deed to the real estate.
After the deed from the public trustee had been obtained, the North Denver Bank advised Connecticut Mutual Life Insurance Company that it had foreclosed the property through the public trustee. It requested Connecticut Mutual to forward the stock certificates representing the 35 shares of stock in the Coal Ridge Ditch Company and the 618 shares of the capital stock in the Lupton Meadows Ditch Company so that the certificates could be properly assigned, showing North Denver Bank as the owner of the stock. Connecticut Mutual then forwarded this stock to North Denver Bank to be held in trust by it to transfer the stock to show its ownership and then return to Connecticut Mutual to be held by it in connection with its loan.
The Coal Ridge Ditch Company received the stock certificates and stock powers and transferred the stock to the bank. The Lupton Meadows Ditch Company refused to make the transfer until the controversy regarding ownership was resolved.
The trial court held that Murato had no interest in the stock at the time he made the assignment to Kinoshita; that Kinoshita acquired no interest in the stock; that DiTirro acquired no interest in the stock by virtue of the assignment from Kinoshita, and was at most a speculator with full knowledge of the controversy. The court further found that the water stock was at all times appurtenant to the real estate; that Murato intended to encumber the water stock with the land when the loan was obtained from the North Denver Bank; that the bank intended to have, and thought it did have, the water stock as security for its loan and did intend to foreclose the equity interest of Murato Farms and Lee Murato, if any, when it foreclosed its second deed of trust through the public trustee; and that the sale of the real estate through the public trustee also carried the water which was appurtenant to the land and which was represented by the water stock certificates.
Plaintiff DiTirro appeals, contending that he is the owner of the water stock subject to the lien of Connecticut Mutual. We disagree and affirm the judgment of the trial court.
The case of Yellowstone Valley Co. v. Associated Mortgage Investors, 88 Mont. 73, 290 P. 255, is a case very nearly in point with the factual situation in the present case. There plaintiff's theory was that shares of stock in the ditch company are personal property and were not and can not be appurtenant to the land; that since water stock was hypothecated to the defendant by way of a pledge in connection with a real estate loan, the pledge was not foreclosed when the defendant bid in the lands for the full amount of the foreclosure judgment; and that the stock was therefore released from its pledge and, the debt being paid, the defendant had no interest in the water stock and should return the same to plaintiff. The evidence in the case was that the land in question was good irrigated farm land, that without water it had little value, and that the water rights represented by the shares of stock in the ditch company were appurtenant to the land. The court stated:
"The Supreme Court of California, speaking in a somewhat similar case, said the shares were personal property for the purpose of transfer by indorsement, but it did not follow from this that they could not be appurtenant to the land. Conceding that they were so far personal property that plaintiff might have transferred the water right by indorsement of the certificates and thereby have severed the water right from his land, it remained undeniably true that the right represented by the certificates was appurtenant to the land, though deemed personal property with reference to the mode of transfer. In re Thomas' Estate, 147 Cal. 236, 81 P. 539; and see Woodstone Marble & Tile Co. v. Dunsmore *1340 Canyon Water Co., 47 Cal.App. 72, 190 P. 213; Frank v. Hicks, 4 Wyo. 502, 35 P. 475, 1025; Burnett v. Taylor, 36 Wyo. 12, 252 P. 790.
"In Re Johnson's Estate, 64 Utah 114, 228 P. 748, 751, it is said that, `if the water right is represented by shares of stock in a corporation, the plain implication is that it may be transferred by a transfer of the certificate of stock, in the ordinary manner, as personal property. But that does not necessarily mean that water rights thus represented may not be an appurtenant to the land upon which the water is used, and pass as such with a conveyance of the land.'"
The court found that when Murato conveyed the real estate to his corporation and included the description of the water stock in the deed it was the intention of the parties to convey the water stock and that the water was appurtenant to the land. Accordingly, the deed conveyed the water stock and the water rights represented by said stock.
The opinion in Colorado v. Lionello, 157 Colo. 161, 401 P.2d 593, contains a summary of the Colorado law in relation to the inclusion of water rights in a deed, wherein it is stated:
"In Hastings & Heyden Realty Co. v. Gest, 70 Colo. 278, 201 P. 37, this court held that:
`It is recognized in this state that water may or may not be appurtenant to land. The provisions of the deed control, and if the deed be silent on the subject, then the intention of the parties is to be determined from all the circumstances of the case, including the fact as to the use of the water and whether it is necessary and essential to the beneficial use and enjoyment of the land. Bessemer Irr. Ditch Co. v. Woolley, 32 Colo. 437, 76 P. 1053, 105 Am.St.Rep. 91; Arnett v. Linhart, 21 Colo. 188, 40 P. 355; Travelers' Insurance Co. v. Childs, 25 Colo. 360, 54 P. 1020; King v. Ackroyd, 28 Colo. 488, 66 P. 906.'
"Specifically, this court in Hastings & Heyden Realty Co. v. Gest, supra, quoted from Bessemer Irr. Ditch Co. v. Woolley, supra, as follows:
`Whether or not a water right used to irrigate land passes as an appurtenance to the land by a conveyance of the land which is silent as to the water right depends upon the intention of the grantor which must be determined by the circumstances of the case, and whether or not the water right is or is not incident and necessary to the beneficial enjoyment of the land, and in the absence of a showing of such intention such water right will be held not to pass as an appurtenance.'
In the case at bar it is undisputed that the water rights involved were essential to the beneficial use and enjoyment of the land. Assuming, arguendo, that the trustee's deed was not sufficient in and of itself to convey the specific description of the water rights which it was the duty of the trustee to convey, he had a full right to correct the omission by execution and delivery of the `correction' trustee's deed. Balfour-Guthrie Inv. Co. v. Woodworth, 124 Cal. 169, 56 P. 891; Brockman v. DiGiacomo, 76 Colo. 428, 232 P. 670."
Accordingly, the deed to the corporation signed by Murato did convey the water and water rights owned by Murato. After that conveyance he was no longer the owner of the specific water rights and his subsequent attempt to convey such rights was of no effect.
Since the ditch companies are parties to this proceeding and there is a controversy as to the right, if any, which the bank acquired through its foreclosure proceeding in the water stock, we will now dispose of this issue. When Murato obtained the loan for the corporation he left *1341 blank stock powers signed by the corporation with the bank. In addition, the corporation executed the deed of trust, which conveyance in the deed of trust included all water and water rights used on the above property or appurtenant thereto. The court found that the water in question represented by the various certificates was appurtenant to the land and necessary for the beneficial use of the land and that it was the intention of the grantor of the deed of trust to convey the water rights to the public trustee. The public trustee later in the foreclosure proceedings issued his deed conveying the property to the bank. This deed specifically described the real estate and stated:
"All right, title and interest which the Public Trustee acquired pursuant to said deed of trust in and to the following described real estate situate in the County of Weld, State of Colorado, to-wit:. . ."
This conveyance, in view of the court's finding, conveyed the water rights that were appurtenant to the land and this included the water represented by the specific shares of water stock formerly owned by Murato. The omission of any mention of the specific water rights or of the certificates of stock in the public trustee's deed was immaterial under these circumstances.
The bank had foreclosed its lien on the real estate and obtained the deed from the public trustee, which deed included not only the real estate but also the water appurtenant thereto. The bank thereupon became the owner of the water evidenced by the certificates of stock (subject to the rights of the insurance company) and the proper way for it to obtain evidence of its ownership was to present the water stock certificates to the ditch companies together with the stock powers attached to the certificates.
Judgment affirmed.
SILVERSTEIN, C. J., and SMITH, J., concur.