**Richard F. THOMAS, Appellant,**

v.

**GREAT WESTERN SUGAR COMPANY, Northern Colorado Water Conservancy District, and Alan Berryman, Division Engineer, Water Division No. 1, State of Colorado, Appellees.**

No. 88CA0022.

Colorado Court of Appeals,
Div. V.

Oct. 13, 1988.

Rehearing Denied Nov. 17, 1988.

Certiorari Denied May 15, 1989.

Burke & Burke, Kenneth J. Burke, Denver, for appellant.

Davis, Graham & Stubbs, Gail L. Wurtzler, Denver, for appellee Great Western Sugar Co.

No appearance for appellee Alan Berryman.

FISCHBACH, Judge.

Richard F. Thomas (Thomas) appeals the judgment of the trial court interpreting his land purchase contract so as to deny his claims to certain water rights. The appeal was originally filed in the supreme court, which transferred it here. We affirm.

In April 1979, Thomas' predecessor in interest entered into an option contract with Great Western Sugar Company (GW) for the purchase of certain real property associated with GW's abandoned Longmont sugar factory. The contract provided that the purchase price included all water rights "attached, allocable or appurtenant" to the subject property.

An attached industrial water list, not clearly incorporated into the contract, enumerated eight specific water rights that would be included. The list did not include the disputed water right now subject to review, namely: 400 acre-feet of water deliverable through the Colorado–Big Thompson Project (CBT water). When Thomas exercised his option to purchase the property, GW included in the transfer one water right not on the industrial water list, but refused to convey the CBT Water.

The trial court found that the parties did not intend to include the CBT water rights in the sale and denied Thomas relief on essentially two alternative grounds. First, it found that the industrial water list was binding on the parties and that any promise by GW to convey subsequently discovered rights implicitly included only rights "of a relatively minor nature." Second, the trial court concluded that the CBT water was, in any case, not attached, allocable, or appurtenant to the subject property at the time the contract was executed. Because we affirm on the broader second ground, we need not reach the question of whether the industrial water list was binding on the parties.

Thomas contends that the CBT water was attached, appurtenant, or allocable to the property and thus included in the sale. We disagree.

The intent of the parties to a contract is to be determined primarily from the language of the instrument itself. *Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 577 P.2d 748 (1978). In the absence of contrary manifestations of intent in the contract itself, contractual terms will be interpreted according to their generally prevailing meaning. *Pepcol Manufacturing Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo.1984). Here, the express terms of the contract required the conveyance of water rights "attached, appurtenant or allocable" to the property at the time the contract was executed.

"Attached" means "the physical union of two otherwise independent structures or objects." *Black's Law Dictionary* 115 (5th ed. 1979). The evidence is undisputed that the CBT water was not physically attached to the Longmont facility when the option contract was signed.

The trial court found that the CBT water was also not allocable to the property, because it was not permanently located there. We agree with the trial court that the water was not allocable, but for different reasons.

A word in a contractual provision must be construed in harmony with both its common meaning and its use elsewhere in the contract. *See Radiology Professional Corp., supra.* The common meaning of "allocable" is "capable of being allocated." *Webster's Third New International Dictionary* 57 (1986). The first definition of "allocate" is "to apportion for a specific purpose or to particular persons or things." *Webster's supra.* This common meaning of the word "allocable" is consistent with the word's use throughout the contract. One paragraph not at issue, for example, refers to utilities allocable to the premises, meaning those water, sewer, electrical, and natural gas lines that were built for and available to the property when the contract was entered, even though not in use at the time. From the definition, it follows that if the water has been previously allocated to a particular purpose or thing for a certain time period, then it is not "capable of being allocated" to another purpose or thing during the same period.

Here, there was such a previous allocation. Pursuant to the contract whereby it obtained the CBT water, GW allocated the CBT water annually. Rules and Regulations of the Northern Colorado Conservancy District (RRNCD) Book II at 4 (1975). During the years 1966–1977, a portion of the CBT water was sent to the Foothills Reservoir, where it was available to the Longmont facility should the need arise. In 1977, GW closed the Longmont factory and chose to cease making the water available to that property. Instead, it stipulated in the District Court for Water Division

No. 1 that all CBT water be delivered to Lake Loveland for administration in connection with GW's augmentation plan. In 1978, that court entered a decree ordering GW to commit its total share of CBT water to the augmentation plan. Regardless of whether GW could have varied the decree by substituting water from another source for the CBT water, the record establishes that at the time the contract was signed GW had been assigning the water to Lake Loveland and its augmentation plan for over two years and intended to continue doing so.

Because the water was already committed to the augmentation plan when the option contract was signed in 1979, it was not capable of being allocated to the Longmont property.

We further agree with the trial court that the CBT water was not appurtenant to the property. If a land purchase contract is silent as to a water right, the question of whether it passes as an appurtenance to land depends on the intent of the grantor, gathered from the circumstances of the case, including whether the right is incident and necessary to the beneficial enjoyment of the land. *See State v. Lionello,* 157 Colo. 161, 401 P.2d 593 (1965); *Bessemer Irrigating Ditch Co. v. Woolley,* 32 Colo. 437, 76 P. 1053 (1904). This is a question of fact for the trial court. *Denver Joint Stock Land Bank v. Markham,* 106 Colo. 509, 107 P.2d 313 (1940).

■ The trial court had ample evidence on which to base its conclusion that the CBT water was not intended to pass with the land. This included statements to that effect by the seller, the disproportionate value of the water right in comparison to the property's contract price, the absence of the right on the industrial water list attached to the contract, and the minimal use made of the water by the Longmont factory. Furthermore, the regulations governing the contract between GW and the Northern Colorado Conservancy District, from which GW had obtained the water, defined the water right as in gross and, thus, not appurtenant to the land. *See RRNCD, supra,* Book II at 4, Book I at 6.

Accordingly, the trial court's findings are supported by the record and will not be disturbed on review. *See Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

JUDGMENT AFFIRMED.

VAN CISE and PLANK, JJ., concur.