Neomi **LOPEZ**, Plaintiff–Appellant,

v.

**DAIRYLAND INSURANCE COMPANY,**
Defendant–Appellee.

No. 93CA1555.

Colorado Court of Appeals,
Div. V.

Aug. 25, 1994.

Rehearing Denied Oct. 6, 1994.

Certiorari Denied March 6, 1995.

Moya & Recht, Frank Moya, Denver, for plaintiff-appellant.

Pryor, Carney & Johnson, P.C., John L. Wheeler, Englewood, for defendant-appellee.

Opinion by Judge CASEBOLT.

In an action for declaratory judgment relative to uninsured motorist coverage under an automobile insurance policy, plaintiff, Neomi Lopez, appeals from a summary judgment entered in favor of defendant, Dairyland Insurance Company. We affirm.

Plaintiff was a passenger in a vehicle driven by Tom Valdez and was injured in an automobile accident caused by his negligence. The vehicle involved in the accident was owned by Mary Valdez, who, on the day of the accident, had loaned Tom Valdez her automobile. At the time of the accident, the vehicle was covered by an insurance policy issued by defendant, in which Tom Valdez was expressly designated as an "excluded driver." The insurance policy contained, among other provisions, uninsured motorist coverage.

Plaintiff demanded uninsured motorist benefits under defendant's policy. Defendant denied the claim, asserting that the excluded driver endorsement excluded all insurance coverage, including uninsured motorist coverage, while the vehicle was operated by Tom Valdez.

Plaintiff then filed this action for declaratory judgment. In granting defendant summary judgment, the trial court ruled that plaintiff could not collect uninsured motorist benefits for injuries arising from the accident because the accident involved a driver who had been specifically excluded from coverage pursuant to § 10–4–721, C.R.S. (1987 Repl. Vol. 4A).

## I.

Plaintiff asserts that defendant's denial of coverage pursuant to the excluded driver endorsement triggers an obligation to provide uninsured motorist coverage. We disagree.

Section 10–4–721(1), C.R.S. (1987 Repl.Vol. 4A) allows an insurer to exclude from coverage a named person whose driving record justifies an increase in premiums, or a cancellation or nonrenewal of the insurance policy. A policy containing such an exclusion "may provide that the insurer shall not be liable for damages, losses, or claims arising out of the operation or use of the insured motor vehicle, whether or not such operation was with express or implied permission of a person insured under the policy." Section 10–4–721(2), C.R.S. (1987 Repl.Vol. 4A). *See Sersion v. Dairyland Insurance Co.,* 757 P.2d 1169 (Colo.App.1988); *see also State Farm Mutual Automobile Insurance Co. v. Graham,* 860 P.2d 566 (Colo.App.1993).

The rights and duties of the parties to an automobile insurance policy are defined by the terms and conditions of the insurance contract. As in other areas of contract law, the language of an insurance policy is determinative of the intent of the parties, and its interpretation is a question of law. *Sersion v. Dairyland Insurance Co., supra.*

If a limitation or exclusion in the policy is unambiguous, the limitation or exclusion must be enforced. Whether an ambiguity exists is a question of law for the court. *State Farm Mutual Automobile Insurance Co. v. Mendiola,* 865 P.2d 909 (Colo.App. 1993).

Here, the excluded driver endorsement signed by Mary Valdez states: "This policy won't provide any insurance when the

motor vehicle is being driven by ... Tom Valdez." Standing alone, this provision excludes "any insurance." The term "any" in its ordinary sense means "every," "all," "the whole of," and "without limit." *See Webster's Third New International Dictionary* 97 (1986); *Winslow v. Morgan County Commissioners,* 697 P.2d 1141 (Colo.App.1985); *O'Brien v. Village Land Co.,* 780 P.2d 1 (Colo.App.1988), *rev'd on other grounds,* 794 P.2d 246 (Colo.1990).

■ Insurance contract terms are to be construed as they would be understood by a person of ordinary intelligence. *Simon v. Shelter General Insurance Co.,* 842 P.2d 236 (Colo.1992). The plain meaning of this phrase is that no insurance *of any kind* will be available if Tom Valdez is the operator. Hence, we interpret the exclusion of "any insurance" to encompass exclusion of uninsured motorist coverage.

## II.

■ Plaintiff next asserts that policy provisions defining uninsured motor vehicles and creating other exclusions conflict with the excluded driver endorsement, thereby requiring coverage. Again, we disagree.

The policy's uninsured motorist provision provides:

*Our Promise to You.* We promise to pay damages ... the owner or operator of an uninsured motor vehicle is legally obligated to pay because of bodily injury you suffer in a car accident while occupying a car ... as a result of having been struck by an uninsured motor vehicle.

*Protection for Others.* Anyone occupying, with your permission, a car we insure has the same rights and obligations that you have under this insurance.

The policy defines uninsured motor vehicles to include "a motor vehicle for which there is no bodily injury policy or liability bond available at the time of the car accident," or "a motor vehicle which has insurance available at the time of the car accident but the company writing it ... denies coverage...." The policy also excludes, as an uninsured motor vehicle, "a car we insure or any motor vehicle owned by you...."

■ When construing the language of an insurance contract, its provisions cannot be read in isolation, but must be considered as a whole. *Security Insurance Co. v. Houser,* 191 Colo. 189, 552 P.2d 308 (1976). In our view, the excluded driver endorsement supersedes these definitions of uninsured vehicles and the provisions regarding uninsured motorist coverage.

The effect of the excluded driver endorsement is to revoke *all* insurance coverage on the vehicle, including uninsured motorist coverage, if the vehicle is operated by the excluded driver. *See Sersion v. Dairyland Insurance Co., supra.* Hence, application of the excluded driver endorsement does not conflict with the definition of an uninsured vehicle.

*State Farm Mutual Automobile Insurance Co. v. Nissen,* 851 P.2d 165 (Colo.1993), relied upon by plaintiff, is not dispositive. In *Nissen,* our supreme court held that the insurance policy there contained conflicting provisions and therefore found uninsured motorist coverage for an owner of an insured vehicle who was injured attempting to prevent its theft. The court noted that the carrier's denial of liability coverage, because the vehicle was being operated by a nonpermissive user, triggered uninsured motorist coverage that was not effectively excluded by the policy terms.

First, *Nissen* did not involve an excluded driver endorsement which, as we have stated above, is a superseding endorsement that serves to revoke all insurance coverage on the vehicle when it is being operated by an excluded driver. And, unlike *Nissen,* the General Assembly has addressed the factual situation presented here by expressly and unambiguously authorizing insurance companies to exclude *all* coverage when a vehicle is operated by an excluded driver. *See* § 10–4–721, C.R.S. (1987 Repl.Vol. 4A); *Sersion v. Dairyland Insurance Co., supra.*

■ Second, the policy considerations enumerated in *Nissen* are not present here. The insured Mary Valdez, under whose contract plaintiff's rights, if any, arise, did not have an objectively reasonable expectation of

coverage, if Tom Valdez was driving. *See General Insurance Co. v. Smith*, 874 P.2d 412 (Colo.App.1993). She voluntarily chose to have him excluded in order to avoid a rate increase in, or the cancellation or non-renewal of, her insurance policy because of his previous driving record. *See* § 10–4–721(1), C.R.S. (1987 Repl.Vol. 4A). She also stipulated that she permitted him to drive her vehicle on the day of the accident.

Here, under the "Protection for Others" portion of the contract of insurance, plaintiff has the same rights and expectations that Mary Valdez would have. Hence, she could not be an intended beneficiary here because Mary Valdez' intent was *not* to benefit either herself or third parties when Tom Valdez was driving her vehicle. *See* R. Keeton, *Insurance Law* § 6.3(a) (1971).

And, since Mary Valdez did not pay a premium for coverage of any kind for Tom Valdez, our holding does not render the insurance policy illusory. *See Terranova v. State Farm Mutual Automobile Insurance Co.*, 800 P.2d 58 (Colo.1990). Indeed, if Mary Valdez had been the passenger here, she could not have obtained uninsured motorist benefits.

Hence, we conclude that defendant's denial of coverage pursuant to the excluded driver endorsement does not create a conflict in the policy.

### III.

Plaintiff next asserts that the driver exclusion endorsement itself requires a construction of the insurance policy to provide coverage to her. The endorsement states:

> This policy won't provide any insurance when the motor vehicle is being driven by ... Tom Valdez. If we are required to make any payments under this policy because of an accident which happens while the motor vehicle is being driven by the person ... named above, you must repay us for those payments and expenses.

Plaintiff contends the second sentence of this provision indicates defendant anticipated it could be responsible for claims arising out of the operation of the vehicle by the excluded driver and is, thus, ambiguous. However,

*Sersion v. Dairyland Insurance Co., supra,* held that an identical provision was not ambiguous, and we consider that holding dispositive of plaintiff's contention. Thus, we find no ambiguity.

### IV.

Plaintiff finally asserts that it would be contrary to public policy and the purposes of uninsured motorist coverage to allow defendant to exclude uninsured motorist coverage for innocent passengers. We are not persuaded.

The purpose of uninsured motorist coverage is to compensate innocent *insureds* for loss caused by financially irresponsible motorists. *Terranova v. State Farm Mutual Automobile Insurance Co., supra.* In view of the analysis noted above, plaintiff is not an "insured" within the meaning of the policy because when the vehicle was operated by Tom Valdez, no person and no vehicle were insured under that particular policy.

A division of this court has held that § 10–4–721(2) "clearly and unambiguously demonstrates a legislative intent to authorize an insurer to exclude from coverage *all* liability arising from the use of an automobile by [an excluded driver]; thus, *the application of the statute cannot be limited or invalidated on public policy grounds." Sersion v. Dairyland Insurance Co.*, 757 P.2d at 1170 (emphasis supplied).

The uninsured motorist statute provides that uninsured motorist coverage must be offered with all insurance policies, but further provides that such coverage may be rejected by the policy holder. Section 10–4–609(1), C.R.S. (1987 Repl.Vol. 4A). Since uninsured motorist coverage is not mandatory and the failure of a motorist to carry uninsured motorist coverage at all would not violate public policy, it follows that the failure to carry uninsured motorist coverage for a particular excluded driver or his innocent passenger also does not violate public policy.

Finally, we note that most other jurisdictions faced with similar situations have upheld the exclusion of uninsured motorist coverage for innocent passengers. *See State*

*Farm Automobile Insurance Co. v. Kiehne,* 97 N.M. 470, 641 P.2d 501 (1982); *Nationwide Mutual Insurance Co. v. Miller,* 305 Md. 614, 505 A.2d 1338 (1986); *McCullough v. Standard Fire Insurance Co.,* 404 So.2d 637 (Ala.1981). *But see Lowe v. State Farm Mutual Automobile Insurance Co.,* 633 F.Supp. 901 (S.D.Miss.1986).

Therefore, we hold that, as a passenger in a vehicle driven by an individual who had been expressly excluded from coverage pursuant to § 10–4–721(2), plaintiff cannot recover uninsured motorist benefits.

Plaintiff's remaining contentions are without merit.

The judgment is affirmed.

NEY and ROTHENBERG, JJ., concur.