**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner,**

v.

**Renee W. STEIN, Respondent.**

**No. 96SC283.**

Supreme Court of Colorado, En Banc.

June 30, 1997.

Levy & Lambdin, Marc R. Levy, Scott P. Landry, Stephanie A. Montague, Englewood, for Petitioner.

Gary H. Hemminger, P.C., Gary H. Hemminger, Denver, for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

We granted certiorari in this case to review the court of appeals opinion in *State Farm Mutual Automobile Insurance Co. v. Stein*, 924 P.2d 1154 (Colo.App.1996) (*Stein II*). We now affirm the judgment of the court of appeals and hold that a bicyclist is not a "pedestrian" within the meaning of the uninsured motorist (UM) coverage portion of the automobile insurance policies issued by the petitioner, State Farm Mutual Automobile Insurance Company (State Farm), and thus conclude that the "anti-stacking" provi-

sion in the policies does not preclude the respondent Renee W. Stein's (Stein) claim for cumulative UM benefits.

## I.

The facts in this case are not in dispute. On September 22, 1991, Joel Stein, Stein's now deceased husband, was riding a bicycle when he was struck and killed by a motor vehicle driven by Ronald Clawson (Clawson). Clawson, who was completely at fault for the accident and Joel Stein's resulting death, was uninsured at the time of the collision.

The Steins were insured under five separate automobile insurance policies issued by State Farm, covering five separate motor vehicles (individually referred to as the Policy, collectively referred to as the Policies). All provisions relevant to our analysis are identical in each Policy. The UM coverage under each Policy is limited to $100,000 per person, and $300,000 per accident. In addition, each Policy contains an "anti-stacking" provision in the UM coverage section. The provision limits the insured's right to cumulate or "stack"[1] UM benefits from more than one policy when the insured sustains bodily injury (1) as a pedestrian; (2) while occupying the vehicle described in the Policy which vehicle is also listed under another policy; or (3) while occupying a vehicle belonging to a person other than an insured under the Policy, a spouse, or a relative.

Pursuant to the Policies, Stein submitted a claim to State Farm individually and as guardian of her four children[2] for $100,000 under each of the five Policies, for a total of $500,000, as damages suffered for Joel Stein's death. State Farm, however, maintained that Joel Stein was a "pedestrian" within the meaning of the first anti-stacking category at the time of the accident, thereby limiting State Farm's liability to the maximum benefits payable under any one Policy, or $100,000. State Farm prorated the UM benefits awarded under each Policy accordingly, and paid Stein $100,000.

In July 1992, the matter proceeded to arbitration.[3] In March 1993, the arbitrators concluded that Stein was entitled to stack UM benefits, and awarded her $454,000, including interest and costs, minus the $100,000 State Farm had previously paid. On May 27, 1993, the district court confirmed the arbitration award and entered judgment against State Farm for $354,000. State Farm appealed.

The court of appeals concluded that the arbitrators lacked authority to arbitrate the anti-stacking issue and thus reversed and remanded for the district court to determine the appropriate construction of the term "pedestrian" within the meaning of the anti-stacking provision in the UM coverage section of each Policy. *State Farm Mut. Auto. Ins. Co. v. Stein,* 886 P.2d 326, 328–29 (Colo. App.1994) (*Stein I* ).

On remand, the district court found that the term "pedestrian" is ambiguous as used in the UM section of the Policies, and concluded that the technical definition of "pedestrian" as set forth in the No–Fault coverage section of each Policy applied. Under that definition, a bicyclist is a "pedestrian" within the meaning of the anti-stacking provision, and therefore Stein was precluded from stacking her UM benefits under the Policies. Stein appealed that decision.

The court of appeals reversed the district court, concluding that the term "pedestrian" was not ambiguous, and that the common, not the technical, meaning applies. *Stein II,* 924 P.2d at 1158. The court of appeals determined that the anti-stacking provision does not express a clear intent to limit cover-

---

**1.** "Stacking" means "aggregating, combining, multiplying, or pyramiding limits of separate policies providing uninsured and underinsured motorist coverage as provided in section 10–4–609." § 10–4–402(3.5), 4A C.R.S. (1994).

**2.** Stein's four children were parties in earlier stages of this case; however, Stein is the only respondent in this appeal.

**3.** State Farm initially refused to submit to arbitration, and filed a declaratory judgment action

in the District Court of Douglas County, seeking a determination that the anti-stacking provision applied. That court dismissed the action based upon an arbitration clause in the UM coverage section of the Policy which required arbitration on all issues regarding amount of damages. The court concluded that the anti-stacking issue concerned amount of damages, and therefore ordered arbitration.

age to persons other than those travelling on foot, and thus does not apply to Stein's claim. *Id.* The court of appeals remanded the case to the district court with directions to reinstate the May 27, 1993, judgment against State Farm in the amount of $354,000. *Id.* We come now to the case before this court after almost six years of litigation, and we affirm the court of appeals.

## II.

Our review of this case is confined to determining the appropriate construction of the term "pedestrian" as used in the anti-stacking provision in the UM coverage section of each Policy. We conclude that "pedestrian" as used in the anti-stacking provision of the Policies is not ambiguous, but rather retains its plain and ordinary meaning of a person on foot. We hold that because Joel Stein was on a bicycle at the time of the accident, he was not a "pedestrian" within the meaning of the UM coverage section of the Policies. Therefore, Stein is entitled to recover within the full amount of her UM benefits under each Policy.

## A.

■ An insurance policy is a contract, the interpretation of which is a matter of law that we review *de novo. See Union Ins. Co. v. Houtz,* 883 P.2d 1057, 1061 (Colo.1994). Both the insured and the insurer are bound by the terms of the policy, unless those terms are waived or annulled. *See Chacon v. American Family Mut. Ins. Co.,* 788 P.2d 748, 750 (Colo.1990).

■ General rules of contract interpretation apply such that the policy is construed to promote the intent of the parties. *See Browder v. United States Fidelity & Guar. Co.,* 893 P.2d 132, 133 (Colo.1995); *Union Ins.,* 883 P.2d at 1061; *Parrish Chiropractic Centers, P.C. v. Progressive Cas. Ins. Co.,* 874 P.2d 1049, 1055 (Colo.1994). As with any contract, we look to the plain language of the policy itself to ascertain such intent. *See Parrish,* 874 P.2d at 1055.

■ We will enforce the policy as written, unless there is an ambiguity in the policy language. *See Union Ins.,* 883 P.2d at 1061;

*Ballow v. PHICO Ins. Co.,* 875 P.2d 1354, 1359 (Colo.1993). A policy provision is ambiguous if it is reasonably susceptible on its face to more than one interpretation. *See Union Ins.,* 883 P.2d at 1061; *Parrish,* 874 P.2d at 1055. In determining whether there is an ambiguity in a policy provision, we must evaluate the policy as a whole and construe the language in harmony with the plain and generally accepted meaning of the words employed, unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended. *See Union Ins.,* 883 P.2d at 1061; *Parrish,* 874 P.2d at 1055; *Ballow,* 875 P.2d at 1359; *Chacon,* 788 P.2d at 750. A mere disagreement between the parties regarding the meaning of a policy term does not create an ambiguity. *See Union Ins.,* 883 P.2d at 1061; *Parrish,* 874 P.2d at 1055.

■ When a contractual provision is clear and unambiguous, courts should neither rewrite it nor limit its effect by a strained construction. *See Parrish,* 874 P.2d at 1055; *Terranova v. State Farm Mut. Auto. Ins. Co.,* 800 P.2d 58, 60 (Colo.1990). Thus, in the absence of ambiguity, an insurance policy must be given effect according to the plain and ordinary meaning of its terms. *See Farmers Ins. Exch. v. Dotson,* 913 P.2d 27, 30 (Colo.1996).

■ In this case, the relevant portion of the anti-stacking provision, which is identically phrased in the UM coverage section of each Policy, states:

**If There Is Other Coverage**

1. If the *insured* sustains *bodily injury* as a pedestrian and other uninsured motor vehicle coverage applies:

    a. the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability; and

    b. we are liable only for our share. Our share is that per cent of the damages that the limit of liability of this coverage bears to the total of all uninsured motor vehicle coverage applicable to the accident.

The words "insured" and "bodily injury" appear in bold italics, while the term "pedestrian" is in normal typeface. Each Policy contains a general definition section on page three consisting of words "which are used in several parts of the policy." In that section, the Policy states: "[State Farm] define[s] some words to shorten the policy. This makes it easier to read and understand. Defined words are printed in bold face italics. *You* can pick them out easily."

Each Policy is separated into five distinct coverage categories: Liability; No–Fault; Uninsured Motor Vehicle; Physical Damage; and Death, Dismemberment, and Loss of Sight. The term "pedestrian" only appears in the No–Fault and UM coverage sections. "Insured" and "bodily injury" that are used in the anti-stacking provision are both defined in the general definition section and are in bold italic typeface throughout the Policies. However, the term "pedestrian" is not listed in the general definitions, but rather is defined only in conjunction with the definition of "insured" in the No–Fault section, and only there does it appear in bold italics.

"Pedestrian" is technically defined in the No–Fault coverage section as "a *person* not *occupying* a *motor vehicle* or machine operated by a motor or engine."[4] The technical definition of "pedestrian" as a person not occupying a motor vehicle is used in the definition of "insured" for purposes of No–Fault coverage. "Insured" holds four different definitions throughout the Policy: in the general definition section, and in the Liability, No–Fault, and UM coverage sections. In the No–Fault section, an "insured" includes "any other *person* who sustains *bodily injury* while: ... a *pedestrian* ...." The technical definition of "pedestrian" appears just below that definition of "insured," and thus applies only to "pedestrian" as used within the No–Fault definition of "insured." Significantly, "pedestrian" as used within that definition of "insured" is in bold italics, indicating its status there as a defined term.

In contrast, "pedestrian" as used in the anti-stacking provision within the UM coverage section is not in bold italic typeface. Such contrast indicates that the parties only intended the technical definition of "pedestrian" to apply in the No–Fault section where it does appear in bold italics, and its ordinary meaning to apply in the UM section.

This conclusion is buttressed by the fact that various terms hold different meanings throughout the Policy. The term "insured" is one example, as noted above. In addition, "relative" is a defined term in the general definition section. That definition applies to the Liability, UM, and Physical Damage coverage sections, but a different definition of "relative" is provided in the No–Fault section. Because some defined words and terms have various meanings throughout the Policy, a reasonable person of ordinary intelligence would believe that "pedestrian" also holds different meaning in the No–Fault section than in the UM portion of the Policy.

Thus, an insured would reasonably expect that the technical definition of "pedestrian" found in the No–Fault coverage section would apply only to that section, particularly since it only appears in bold italics in that section. Likewise, a policy holder would logically anticipate that in the UM coverage section, "pedestrian," which is not in bold italics, and which is not listed in the general definitions, retains its plain and ordinary meaning of a person on foot.[5]

Public policy favors protecting consumers by requiring insurers to disclose fully and fairly to insureds what insurance protection is actually being provided for the premium charged. *See Newton v. Nationwide Mut. Fire Ins. Co.,* 197 Colo. 462, 468, 594 P.2d 1042, 1045 (1979).

■ There is nothing in the Policies to indicate the parties' intent to apply a technical meaning to "pedestrian" in the UM coverage section. Therefore, we agree with the

**4.** That definition is substantially similar to the definition set forth in section 10–4–703(9), 4A C.R.S. (1994), of the Colorado Auto Accident Reparations Act, §§ 10–4–701 to –725, 4A C.R.S. (1994 & 1996 Supp.), which is also known as the No Fault Act.

**5.** Obviously, the plain and generally accepted meaning of "pedestrian" is "a person going on foot." *Merriam Webster's Collegiate Dictionary* 856 (10th ed.1995).

court of appeals that the term "pedestrian" is not ambiguous, and we apply the plain and generally accepted meaning of that term to the anti-stacking provision. We conclude that because a bicyclist is not someone on foot, Joel Stein was not a "pedestrian" when he was struck while on his bicycle. As such, the anti-stacking provision in each Policy does not apply to Stein's claim for UM benefits, and therefore she is entitled to stack coverage from each of the five Policies in this case.

### B.

State Farm also argues that the technical definition of "pedestrian" in the No Fault Act should be applied so as to preclude Stein from stacking UM benefits. Specifically, State Farm contends that the definition of "pedestrian" as set forth in section 10–4–703(9), 4A C.R.S. (1994), of the No Fault Act should apply to all parts of the Colorado automobile accident insurance system, including UM coverage pursuant to section 10–4–609, 4A C.R.S. (1994 & 1996 Supp.). State Farm asserts that the UM statute is dependant upon and must comply with the terms of the No Fault Act, and therefore that the No Fault Act's definition of "pedestrian" must be applied to understand the meaning of the term in the context of UM coverage under the Policies.

Section 10–4–703(9) does define "pedestrian" as "any person not occupying or riding in or upon a motor vehicle or machine operated by a motor or engine." That definition appears only in the No Fault Act. Not only are there no technical definitions of any terms in section 10–4–609, the UM statute in Title 10, §§ 10–1–101 to –21–106, 4A C.R.S. (1994 & 1996 Supp.), but section 10–4–609 does not even include a reference to a pedestrian. The UM statute does provide that an UM "policy may contain provisions which prohibit stacking the limits of more than one uninsured motorist coverage policy as provided in this section...." § 10–4–609(2), 4A C.R.S. (1994). However, that statute makes no reference to how that anti-stacking term would or should affect pedestrians.

Furthermore, section 10–1–102, 4A C.R.S. (1994 & 1996 Supp.), which sets forth the general definitions as used throughout Title 10, does not contain a definition of "pedestrian."

The No Fault Act sets out the minimum coverage that insurers must provide to avoid inadequate compensation to victims of automobile accidents. *See* §§ 10–4–702, –706, 4A C.R.S. (1994 & 1996 Supp.); *Farmers Ins. Exch. v. Dotson,* 913 P.2d 27, 30 (Colo.1996). So, too, the UM statute compels insurance companies to extend minimum UM coverage unless rejected by the insured. *See* § 10–4–609; *Kral v. American Hardware Mut. Ins. Co.,* 784 P.2d 759, 765 (Colo.1989); *Morgan v. Farmers Ins. Exch.,* 182 Colo. 201, 203, 511 P.2d 902, 904 (1973). In that context, the UM statute neither requires insurance companies to include anti-stacking provisions, nor details the manner in which an anti-stacking provision would apply to a bicyclist or a pedestrian injured by an uninsured motorist.

In order to adopt State Farm's argument with respect to the import of the No Fault Act, we would need to conclude that the definition of "pedestrian" used in the No Fault Act delimits UM coverage, even if portions of the applicable policies are in conflict with that definition. To defeat that argument we need go no further than the language of the Policy itself.

State Farm represents in the Policy that it will print defined terms in bold italic typeface to make the Policy easier for the customer to understand. The Policy states: "We define some words to shorten the policy. This makes it easier to read and understand. Defined words are printed in bold face italics. *You* can pick them out easily." State Farm also "agree[s] to insure *you* [the insured] according to the terms of this policy .... [and represents that] this policy contains all of the agreements between *you* and us or any of our agents."

Thus, by State Farm's own representations in the Policies, an insured, when reading each Policy, will expect that (1) all terms holding a technical meaning will be in bold italics; and (2) the customer will be able to understand the entire Policy without need for reference to any materials beyond the Policy

itself. State Farm incorporated the No Fault Act's definition of "pedestrian" into the No–Fault coverage portion of the Policies by setting forth substantially the same definition as provided in section 10–4–703(9). This enables a customer to understand the term "pedestrian" as used in the No Fault Act without the need for knowledge beyond the Policy itself.

Determination of a policy term's meaning is not answered by reference to what those who are experts in construction of policies or those with a clear understanding of the legal effects of specific language might understand by reading the policy. *See Simon v. Shelter Gen. Ins. Co.,* 842 P.2d 236, 240 (Colo.1992). Rather, construction must be ascertained by reference to what a person of ordinary intelligence would understand. *See id.*

It would defy common experience as well as our precedent to require an insured to have working familiarity with the No Fault Act in order to be able to understand the definition of a term used in the Policy, particularly when the Policy itself invites the insured to rely upon the use and absence of definitions within its four corners. We therefore find State Farm's reliance upon the statutory definition unpersuasive.

### C.

■ Moreover, even if we were to find that the term "pedestrian" as used in the anti-stacking provision was ambiguous, we would nevertheless reach the same conclusion that the term retains its plain and ordinary meaning. Once an ambiguity in the policy language is found, it is construed against the insurer who drafted the policy and in favor of the insured. *See Union Ins.,* 883 P.2d at 1061; *Parrish,* 874 P.2d at 1055; *Ballow,* 875 P.2d at 1359; *Chacon,* 788 P.2d at 750.

In the face of an ambiguity, either created by statute or by the terms of the Policy, we necessarily would conclude that the term is reasonably susceptible to two interpretations: (1) its plain and generally accepted meaning as a person on foot; or (2) the technical meaning as a person not occupying a motor vehicle. Construing the term in favor of the insured, we would interpret the term as a person on foot.

State Farm could have provided in the Policies that the broad technical definition of "pedestrian" applied to the UM coverage portion of the Policy. "'In the absence of statutory inhibition, an insurer may impose any terms and conditions consistent with public policy which it may see fit.'" *Chacon,* 788 P.2d at 750 (quoting 12 Appleman, *Insurance Law and Practice* § 7004, at 37–39 (rev. ed.1981) (footnotes omitted)). State Farm could have included such a definition in the general definition section that governed the entire Policy unless stated otherwise; it could have set forth the technical definition in the UM coverage portion; it could have expressly stated that the definition as set forth in the No–Fault coverage section applied to the anti-stacking provision in the UM section; or it could have provided the technical definition in the anti-stacking provision itself. State Farm did none of these. We therefore do not accept State Farm's assertion that the technical definition of "pedestrian" applies to the anti-stacking provision when State Farm did not express such intent.

### III.

We conclude that the term "pedestrian" as used in the anti-stacking provision in the UM coverage section of the Policies is not ambiguous, and that the term's plain and generally accepted meaning of a person on foot is applicable. Thus, a bicyclist is not a "pedestrian" within the meaning of the anti-stacking provision, and Stein is entitled to stack UM benefits under the five separate Policies. We therefore affirm the judgment of the court of appeals, including the remand to the district court with directions to reinstate the May 27, 1993, judgment against State Farm in the amount of $354,000.

VOLLACK, C.J., dissents.

Chief Justice VOLLACK dissenting:

The majority determines that the definition of "pedestrian," as found in the no-fault portion of the insurance policies issued by State Farm Mutual Automobile Insurance

Company (State Farm) and in section 10–4–703(9), 4A C.R.S. (1994), of the No Fault Act, does not apply to the uninsured motorist (UM) coverage portion of the insurance policies at issue. The majority thus holds that "a bicyclist is not a 'pedestrian' within the meaning of the [UM] coverage portion of the automobile insurance policies" in this case. Maj. op. at 385. As such, the majority concludes that the anti-stacking provision in each State Farm insurance policy issued to Renee Stein (Stein) and her family does not apply to her claim for UM benefits. I disagree. I believe that the definition of "pedestrian" as found in the no-fault portion of the State Farm policies and in section 10–4–703(9) of the No Fault Act should apply to Stein's claim for UM benefits in this case. Therefore, I believe that a bicyclist is a "pedestrian" and that the anti-stacking provision contained in each of the insurance policies applies to Stein's claim for UM benefits. Accordingly, I dissent.

## I.

Insurance contract terms are to be construed as they would be understood by a person of ordinary intelligence. *See Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236, 240 (Colo.1992). When construing the language of an insurance contract, one should not read its provisions in isolation, but must consider them as a whole. *See id.* at 239. An integrated contract is to be interpreted in its entirety so as to harmonize and give effect to all provisions so that none will be rendered meaningless. *See Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo.1984). When the parties give contractual terms specific meanings, those provisions should control. *See Thomas v. Great Western Sugar Co.*, 773 P.2d 582, 583–84 (Colo.App.1988).

In the current case, the State Farm insurance policies at issue contain "anti-stacking" clauses as follows:

If there is other coverage:

1. If the insured sustains bodily injury as a pedestrian and other uninsured motor vehicle coverage applies:

a. the total limits of liability under all such coverage shall not exceed that of the coverage with the highest limit of liability; and

b. we are liable only for our share. Our share is that percent of the damages that the limit of liability of this coverage bears to the total of all uninsured motor vehicle coverage applicable to the accident.

According to the "anti-stacking" clauses, an insured is precluded from stacking UM benefits if the insured sustains bodily injury as a pedestrian. However, a definition for the word "pedestrian" is absent from the UM provisions and the general definitions of the State Farm policies. Nevertheless, the no-fault portion of the policies defines a "pedestrian" as "a person not occupying a motor vehicle or machine operated by a motor or engine." According to this definition, a bicyclist would be considered a "pedestrian."

The majority holds that because no definition for the word "pedestrian" exists in the UM portion of the insurance policies, the definition of that word in the no-fault portion of the policies should not apply in this case. Thus, the majority concludes that, according to the common meaning of the word, a "pedestrian" does not include a bicyclist.[1]

I disagree with the majority's holding because its construction of the insurance policies in this case fails to interpret the policies in their entirety. Construing the policies in their entirety, a person of ordinary intelligence would understand that the word "pedestrian" is assigned the same meaning in each instance in which it appears in the policies. This is particularly true because, unlike the word "insured," which is explicitly designated with four different definitions in the State Farm policies, the word "pedestrian" is not explicitly designated with different meanings in the two places in which it appears. Assigning two different definitions to the same word in the same policies serves only to confuse rather than clarify the provisions of the policies. By discounting the

---

1. As the majority notes, the common meaning of the word "pedestrian" is " 'a person going on foot.' " Maj. op. at 388 n. 5.

definition of the word "pedestrian" found in the no-fault portion of the policies when determining the meaning of the word in the UM portion, the majority reads the insurance policies' provisions in isolation rather than considering them as a whole. The majority thus fails to harmonize and give effect to all of the policies' provisions so that none will be rendered meaningless.

Moreover, this court has held that the same phrase contained in different portions of an insurance policy should be interpreted to have the same meaning. Specifically, in *Cung La v. State Farm Automobile Insurance Co.*, 830 P.2d 1007, 1009 (Colo.1992), this court held that the phrase "arise out of" contained in the liability portion of an automobile insurance policy had the same meaning when applied to the UM provisions of that policy. In the current case, the parties gave the word "pedestrian" a specific meaning within the no-fault portion of the insurance policies. The fact that the word "pedestrian" was not redefined in the UM portion of the insurance policies does not preclude application of that word's definition as found in the no-fault portion of the policies. Consequently, the meaning of "pedestrian" found in the no-fault portion of the policies should control and it is unnecessary to look to the word's common meaning as the majority does.

## II.

Additionally, I believe that the definition of "pedestrian" found in the No Fault Act should apply to the UM coverage portion of the State Farm policies in this case. Provisions of the No Fault Act have been applied to UM coverage. For example, in *Lopez v. Dairyland Insurance Co.*, 890 P.2d 192, 194–95 (Colo.App.1994), a panel of the court of appeals applied section 10–4–721, 4A C.R.S. (1987), of the No Fault Act to a claim involving UM coverage. In *Lopez*, the court of appeals held that section 10–4–721, which allows insurers to exclude certain named

drivers from insurance coverage, precluded UM coverage for a passenger injured while riding in the described vehicle because the policy specifically excluded the named driver involved. *Lopez*, 890 P.2d at 194.

In the current case, section 10–4–703 of the No Fault Act provides a definition for the word "pedestrian" as follows:

> As used in this part 7, unless the context otherwise requires:
>
> . . . .
>
> (9) "Pedestrian" means any person not occupying or riding in or upon a motor vehicle or machine operated by a motor or engine.

§ 10–4–703, 4A C.R.S. (1994). While section 10–4–703(9) provides a specific definition for the word "pedestrian" as it is used in the No Fault Act, the language of this section does not limit the definition of "pedestrian" to the No Fault Act. Moreover, section 10–4–703(9) provides the only definition for the word "pedestrian" in Colorado's statutory provisions for automobile insurance. As such, I believe that it is appropriate to utilize the No Fault Act's definition of "pedestrian" in evaluating the current claim for UM benefits. Consequently, I disagree with the majority's holding that the No Fault Act's definition of the word "pedestrian" is inapplicable to the UM coverage portion of the insurance policies at issue.[2]

## III.

I disagree with the majority's refusal to apply the definition of the word "pedestrian," as found in the no-fault portion of the insurance policies and in section 10–4–703(9) of the No Fault Act, to the UM coverage portion of the insurance policies in this case. In my view, the definition of "pedestrian" contained in these contractual and statutory provisions should apply to Stein's claim for UM benefits. As such, I believe that a bicyclist is a "pedestrian" and that the anti-stacking provision of the insurance policies applies to

---

**2.** Defining the term "pedestrian" in accordance with the No Fault Act and as stated in the insurance policies at issue is in harmony with the recognition that persons involved in automobile accidents will generally fall into two simple cate-

gories: those who are occupying a vehicle and those who are not occupying a vehicle, the latter being classified as "pedestrians." *See Rose v. Allstate Ins. Co.*, 782 P.2d 19 (Colo.1989).

Stein's claim for UM benefits. Accordingly, I dissent.