**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 24, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

P&S LLC, a Colorado limited liability
company,

     Plaintiff - Appellant,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, a
capital stock company,

     Defendant - Appellee.

No. 15-1308
(D.C. No. 1:14-CV-00735-LTB-CBS)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

P&S sued National Union Fire Insurance Company, claiming that a National Union policy covered P&S's claims that P&S made against an insured party. The district court granted summary judgment for National Union, and P&S appeals. We must decide whether a policy exclusion bars coverage for P&S's claims. We hold that it does. Therefore, exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

BACKGROUND

## I.  P&S's Travel-Club Membership

In 2006, P&S, through its owner and sole member, Patrick Meyers,[1] began researching corporate memberships in luxury-travel clubs. Ultimately, P&S came across Private Escapes, a luxury-travel company that had recently announced a proposed merger with another company, Ultimate Resorts. The two merging companies would form a new luxury-travel company, Ultimate Escapes. After learning of P&S's interest in a luxury-travel membership, Private Escapes's Chief Executive Officer, Richard Keith, worked to entice P&S to join Private Escapes before the merger. In this regard, according to P&S, Keith promised P&S that its annual fees and membership rights with Private Escapes would be "grandfathered" after the merger. Appellant's App. vol. II at 271. Relying on these representations, P&S paid Private Escapes a $215,000 membership deposit. In May 2008, as planned, Private Escapes and Ultimate Resorts combined to form Ultimate Escapes.[2] Keith became a co-CEO of Ultimate Escapes.

## II.  The Insurance Policy

Soon after this, Ultimate Escapes purchased from National Union an "Executive and Organization Liability Insurance Policy." Appellant's App. vol. I at

---

[1] For convenience, we refer to Meyers and P&S as "P&S."

[2] According to P&S, no merger actually took place; instead, P&S contends that "Private Escapes and Ultimate Resorts merely assigned and/or sold assets to Ultimate Escapes, including real estate and membership contracts." Appellant's App. vol. I at 12.

83. Generally, the policy covered Ultimate Escapes for any claim arising from any wrongful act of an Ultimate Escapes executive or employee. The policy limited this coverage through several exclusions, including a "Specific Entity Exclusion":

> In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable for any **Loss** in connection with any **Claim** made against or brought by or on behalf of any entity(ies) listed below and/or any **Executive** or **Employee** thereof; or by any security holder of the **Organization** whether directly or derivatively, unless such **Claim** is instigated and continued totally independent of, or without the intervention of such entity(ies) and/or any **Executive** or **Employee** thereof:
>
> 1. Private Escapes Holdings, LLC (including any subsidiary or affiliate thereof)
>
> 2. Ultimate Resort Holdings, LLC (including any subsidiary or affiliate thereof)

*Id.* at 146 (emphasis in original). In sum, the Specific Entity Exclusion removed from coverage any losses connected to any claim made against Private Escapes and its executives and employees.[3]

## III.    P&S's Issues with Ultimate Escapes

After its creation, Ultimate Escapes refused to continue the terms of P&S's agreement with Private Escapes. After being advised of this, P&S tried to "resign" from Ultimate Escapes and recover its $215,000 membership deposit. Appellant's App. vol. II at 270. But Ultimate Escapes refused to refund the deposit. Keith told P&S that Ultimate Escapes would require P&S to sign a new membership agreement

---

[3] Similarly, the Specific Entity Exclusion removed from coverage any losses connected with any claim made against Ultimate Resorts and its executives and employees.

3

with Ultimate Escapes, one without the favorable terms that Keith had promised would transfer from the original Private Escapes agreement.

In response, P&S began negotiating with Keith and Jeffrey Sparks, Ultimate Escapes's general counsel. In its briefing (but not in its complaint), P&S says that it believed—based on Keith's and Sparks's statements—that it was negotiating with Ultimate Escapes. In December 2008, P&S reached a tentative agreement with Ultimate Escapes, but P&S later declined to ratify it after learning that Ultimate Escapes had recently imposed on all members a special assessment. P&S refused to pay its share of the assessment ($15,769) and resumed negotiations with Keith.

On July 23, 2010, P&S reached a written settlement with Ultimate Escapes. Under the agreement, both Ultimate Escapes and Private Escapes (despite the asset sale) agreed to refund $135,000 of P&S's original $215,000 membership deposit, in 18 equal monthly installments of $7,500, beginning on August 1, 2010.[4] During final negotiations, P&S asked about Ultimate Escapes's financial status. According to P&S, Sparks responded that Ultimate Escapes was presently obtaining new financing. P&S alleges that this representation was untrue—that Ultimate Escapes was instead preparing to file for bankruptcy. P&S says that had it known this, it would not have settled with Ultimate Escapes.

---

[4] Notwithstanding its asset sale to Ultimate Escapes, Private Escapes's "CEO," Richard Keith, signed the agreement. Appellant's App. vol. II at 538.  Keith did not sign on Ultimate Escapes's behalf; rather, Philip Callaghan, Senior Vice President and Chief Financial Officer, signed for Ultimate Escapes. *Id.* at 521.

4

## IV.     The State Lawsuit and Denial of Coverage

In September 2010, after Ultimate Escapes defaulted on the first $7,500 monthly installment, P&S sued Ultimate Escapes in Colorado state court. Soon after, Ultimate Escapes filed for bankruptcy, and the state court stayed and later dismissed P&S's lawsuit. In this lawsuit, P&S did not name Keith as a defendant, and it alleged only that both Ultimate Escapes and Private Escapes had breached the settlement agreement by failing to pay the first installment.

In May 2011, P&S filed a second complaint in Colorado state court, this time against Keith and Private Escapes—but not against Ultimate Escapes. In this complaint, P&S described Keith as "an individual who at all times relevant to the facts underlying this Complaint was Chief Executive Officer of Private Escapes." Appellant's App. vol. III at 567. P&S asserted two claims solely against Private Escapes, and three claims jointly against Keith and Private Escapes. Generally, P&S alleged that Private Escapes—through Keith—had misrepresented material facts that induced P&S to sign a membership agreement with Ultimate Escapes, and that they had failed to disclose a material fact (Ultimate Escapes's impending bankruptcy) before P&S settled with Ultimate Escapes.

Soon after P&S filed its 2011 complaint, another former Private Escapes member, Peter Jupp, sued Private Escapes, Ultimate Escapes, and Keith in federal district court. Although Jupp's complaint alleged claims similar to P&S's, Jupp's claims differed from P&S's in two crucial respects: Jupp sued a different defendant, Ultimate Escapes (not Private Escapes), and described Keith not only as Private

5

Escapes's CEO but also as a "'co-CEO' of Ultimate Escapes." Appellant's App. vol. V at 826. After being served with Jupp's complaint, Keith submitted it to National Union, requesting coverage. National Union recognized that the policy's Specific Entity Exclusion would exclude Jupp's claims against Private Escapes and Keith as its CEO, but National Union initially determined that "limited coverage is afforded to Richard Keith as co-CEO at Ultimate Escapes, Inc." *Id.* at 843. But before paying Jupp's claim, National Union required Ultimate Escapes to "specify whether Richard Keith is an [Ultimate Escapes and thus a covered] 'Executive,'" "reserv[ing] the right to supplement and/or deny coverage" based on Ultimate Escapes's response. *Id.* at 844. Eventually, National Union settled with Jupp without admitting that the policy covered any of Jupp's claims.

Just as he had done with Jupp's complaint, Keith submitted P&S's 2011 complaint against him to National Union for coverage. P&S contends that Keith's counsel repeatedly requested a decision from National Union but received no response. Ultimately, nine months later, National Union denied Keith's request for coverage for any claims P&S had made against him in P&S's second lawsuit. National Union's adjuster did so based on Keith's being "the Chief Executive Officer of Private Escapes . . . one of the above-referenced [excluded] Entities."[5] Appellant's App. vol. I at 71. The adjuster's supervisor agreed that National Union's insurance

_____

[5] We do not understand National Union to contend that it could deny coverage for Keith's misrepresentations as Ultimate Escapes's CEO (and it bears repeating that P&S's complaint made no such claim) merely because Keith served as Private Escapes's CEO at the same time.

policy provided Keith no coverage, noting that P&S's complaint did not include a claim against Keith in his capacity as an Ultimate Escapes executive.

Faced with National Union's denial of coverage, Keith settled P&S's lawsuit for $450,000. Then, in exchange for P&S's not seeking to collect the judgment against him, Keith assigned his insurance-policy rights and claims against National Union to P&S.

## V.    The Current Lawsuit

In March 2014, P&S sued National Union, asserting the claims that Keith assigned to P&S as part of its $450,000 settlement with him. Soon after this, National Union removed P&S's state-court case to federal district court. In an amended complaint, P&S alleged that National Union's insurance policy covered P&S's claims made against Keith in its second state-court complaint. This coverage was necessary for P&S to succeed against National Union on the claims Keith assigned to P&S. Specifically, P&S's assigned claims against National Union were Keith's claims for breach of contract, breach of the duty of good faith and fair dealing, and bad-faith denial of coverage.

In response, National Union moved for summary judgment, arguing that the Specific Entity Exclusion barred coverage on P&S's claims made against Keith in P&S's second state case. Citing the Exclusion's language, National Union contended that "[a]ll the allegations in [P&S's] underlying complaint against Keith were made in connection with the claim against Private Escapes and Private Escapes'[s] executive," *id.* at 197, and that "[a]ll of the damages demanded in P&S's lawsuit

7

were for P&S's claim against Private Escapes and in connection with P&S's claim against Private Escapes," *id.* at 199 (emphasis omitted). Thus, National Union said, this meant that P&S had "no way to divorce Private Escapes from the allegations in P&S's underlying lawsuit." *Id.*

P&S countered on two bases. First, P&S asserted that the National Union policy covered Keith's alleged misrepresentations because Keith had acted as Ultimate Escapes's co-CEO during the settlement negotiations. And second, P&S asserted that an exception to the Specific Entity Exclusion allowed coverage of claims made against Private Escapes and Keith acting as its CEO. Specifically, P&S relied on the Specific Entity Exclusion's language to argue that its claims were excepted because they were "instigated and continued totally independent of Private Escapes" or of Keith acting as Private Escapes's CEO. *Id.* at 249–50. To bolster these two arguments, P&S relied on National Union's having settled and paid Jupp's claim, which, according to P&S, "involved facts nearly identical to this case." *Id.* at 247.

The district court granted summary judgment for National Union. Addressing P&S's first argument, the court concluded that the Specific Entity Exclusion barred coverage because P&S's losses were, in the Exclusion's words, "in connection with any claim" that P&S had made against Private Escapes and Keith acting as Private Escapes's CEO. Appellant's App. vol. IV at 812–16. For P&S's second argument, the district court concluded that the Specific Entity Exclusion's exception applied just to securities claims that shareholders brought against Private Escapes and its executives and employees. In addition, the district court rejected P&S's reliance on Jupp's case

8

because, unlike P&S, Jupp had filed claims against Ultimate Escapes and against Keith, who Jupp alleged in his complaint was at all relevant times a "'co-CEO' of Ultimate Escapes." Appellant's App. vol. V at 826. P&S timely appealed.

## DISCUSSION

### I. Standard of Review and Choice of Law

We review de novo a district court's grant of summary judgment. *Bohn v. Park City Grp., Inc.*, 94 F.3d 1457, 1460 (10th Cir. 1996). We view the factual record and any inferences from it in the light most favorable to the nonmoving party. *Id.* We will uphold the district court's grant of summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We agree with the parties that Colorado law governs the insurance policy. *See Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009) (applying Colorado law when the parties entered into the insurance contract in Colorado and the insured's place of business was in Colorado). Colorado courts "construe an insurance policy's terms according to principles of contract interpretation." *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 501 (Colo. 2004). They interpret insurance policies "to promote the intent of the parties." *State Farm Mut. Auto. Ins. Co. v. Stein*, 940 P.2d 384, 387 (Colo. 1997). "As with any contract, [Colorado courts] look to the plain language of the policy itself to ascertain such intent." *Id.* Colorado courts "will enforce the policy as written, unless there is an ambiguity in the policy language." *Id.* A policy provision is ambiguous when "it is

9

reasonably susceptible on its face to more than one interpretation." *Id.* The parties' "mere disagreement" does not create an ambiguity. *Id.* If unambiguous, "an insurance policy must be given effect according to the plain and ordinary meaning of its terms." *Id.*

## II.    The Specific Entity Exclusion

P&S argues that the district court erred in concluding that the Specific Entity Exclusion barred coverage of its state-court claims against Private Escapes and Keith. Under its reading, P&S claims that the Exclusion merely "precludes coverage for a small subset of losses that are 'in connection' with a claim made against Private Escapes or its executives, unless the claim is instigated and continued independent of Private Escapes and its executives." Appellant's Opening Br. at 23. Accordingly, P&S contends that the Exclusion does not bar coverage for any loss from Keith's wrongful acts during his negotiations with P&S.

We agree with the district court that the Specific Entity Exclusion bars coverage. The Exclusion bars coverage "for any **Loss** in connection with any **Claim** made against or brought by or on behalf of any entity(ies) listed below and/or any **Executive** or **Employee** thereof." Appellant's App. vol. I at 146 (emphasis in original). One entity listed in the Exclusion is Private Escapes.

Here, in its second state-court complaint, P&S stated two claims solely against Private Escapes and three claims jointly against Private Escapes and Keith. P&S's complaint described Keith as "an individual who at all times relevant to the facts underlying this Complaint was Chief Executive Officer *of Private Escapes*." *Id.* at 58

10

(emphasis added). In contrast, P&S did not assert a claim solely against Ultimate Escapes or even jointly against Keith and Ultimate Escapes. In our view, P&S's failure to do so refutes its argument on appeal that it sued Keith at least in part for his misrepresentations while acting as Ultimate Escapes's CEO. Thus, we agree with the district court that the Specific Entity Exclusion bars coverage because P&S sued Keith as Private Escapes's CEO and, therefore, any losses P&S sought would have resulted directly from P&S's claims.

Because the sought losses would flow directly from P&S's claims against the excluded entity, Private Escapes, and its CEO, Keith, National Union has easily shown that the losses would be "in connection with" the claims. Although we agree with National Union that this phrase is read broadly,[6] it need not be read broadly here.

For its second argument in favor of the policy's providing Keith coverage against its claims, P&S argues that the "unless" exception in the Specific Entity Exclusion applies to its claims against Private Escapes and Keith. To explain why this argument fails, we again quote the exclusion in full:

> In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable for any **Loss** in connection with any **Claim** made against or brought by or on behalf of any entity(ies) listed below and/or any **Executive** or **Employee** thereof; or by any security holder of the **Organization** whether directly or derivatively, unless such **Claim** is instigated and continued totally

---

[6] *See Sachs v. Am. Family Mut. Ins. Co.*, 251 P.3d 543, 549 (Colo. App. 2010) (declaring that "in connection with" "excludes more broadly" than even the phrase "arising out of") (citing *Hanson v. Gen. Accident Fire & Life Ins. Corp.*, 450 So. 2d 1260, 1261 (Fla. Dist. Ct. App. 1984)).

11

independent of, or without the intervention of such entity(ies) and/or any **Executive** or **Employee** thereof:

1. Private Escapes Holdings, LLC (including any subsidiary or affiliate thereof)

2. Ultimate Resort Holdings, LLC (including any subsidiary or affiliate thereof)

*Id.* at 146 (emphasis in original).

In effect, P&S argues that the "unless" clause should modify not only the clause it immediately follows ("or by any security holder . . .") but also a preceding clause ("the Insurer shall not be liable for any Loss in connection with any Claim . . ."). Unfortunately for P&S, the "unless" clause is not so nimble that it can leap the "; or" separating the two clauses. *Cf. Payless Shoesource, Inc. v. Travelers Cos., Inc.*, 585 F.3d 1366, 1370 (10th Cir. 2009) (rejecting the argument that a clause modified only the immediately preceding clause when there was no conjunction separating the policy's clauses from one another).

If we followed P&S's lead and ignored the "; or" language, we could conclude that the "unless" clause referred to the two preceding clauses. But even then we would be left to explain why the exclusion referred to the excluded entities and their officers and employees not simply once—all that would be needed—but twice. *See Fire Ins. Exch. v. Sullivan*, 224 P.3d 348, 351 (Colo. App. 2009) (construing "the policy so that all provisions are harmonious and none is rendered meaningless").

12

For these reasons, we agree with the district court and hold that the Specific Entity Exclusion bars coverage for P&S's claims against Private Escapes and Keith for misrepresentations made as Ultimate Escapes's CEO.[7]

## III. Extrinsic Evidence

P&S also contends that the district court should not have granted summary judgment, because extrinsic evidence creates genuine disputes of fact. In support, P&S cites *Cyprus Amax Minerals Co. v. Lexington Insurance Co.*, 74 P.3d 294, 301–02 (Colo. 2003), where the Colorado Supreme Court noted that "[e]xtrinsic evidence may assist the trial court in determining whether and to what extent actual liability . . . is covered by an existing policy." National Union argues that we should follow the district court's lead and not rely on extrinsic evidence.

We agree with National Union. As we have already concluded, the Specific Entity Exclusion unambiguously precludes coverage, eliminating the need to resort to extrinsic evidence. Although the Colorado Supreme Court has said that trial courts may use extrinsic evidence to determine coverage, it has done so only when the policy is ambiguous. The Colorado Supreme Court has said that it "will enforce the policy as written" when the policy is unambiguous. *Stein*, 940 P.2d at 387; *cf. Ad*

---

[7] At oral argument, P&S first contended that an allocation clause in the policy would permit National Union to pay out on the claims against Keith. In response to a question, P&S asserted that it had raised the allocation-clause argument in its opening brief and in the district court while discussing Jupp's case. But we do not see where P&S even asserted that the policy has an allocation clause, let alone that such a clause would require National Union to pay for the losses that Keith may have caused by his misrepresentations. "Issues raised for the first time at oral argument are considered waived." *Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 805 (10th Cir. 1998).

13

*Two, Inc. v. City & Cty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376–77 (Colo. 2000) (stating that "[e]xtraneous evidence is only admissible to prove intent where there is an ambiguity," and "[a]bsent such ambiguity, we will not look beyond the four corners of the agreement to determine the meaning intended by the parties").

But we would reach the same result even if we considered P&S's extrinsic evidence. P&S points to four pieces of extrinsic evidence: (1) P&S negotiated with Keith in his role as an Ultimate Escapes executive; (2) P&S understood (based on representations) that it was dealing with Ultimate Escapes; (3) by the time of the settlement negotiations, Private Escapes was just a shell, and Private Escapes and Ultimate Escapes shared no common interests after the asset sale; and (4) Keith listed his Ultimate Escapes job title in his e-mail signature. But none of these items changes P&S's second state-court complaint, which alleged losses directly based on claims against Private Escapes and Keith, who P&S described as Private Escapes's CEO.

P&S also argues that the district court erred by not finding the policy ambiguous because National Union paid Jupp's claim. Again, we disagree with P&S. Jupp's case is significantly different from P&S's case. First, unlike P&S, Jupp sued Ultimate Escapes and also alleged that Keith was, "[a]t all times pertinent to this Complaint, . . . 'co-CEO' of Ultimate Escapes." Appellant's App. vol. V at 826. Second, National Union reserved its right to deny coverage for Keith until Ultimate Escapes provided additional information about "the relationship between individual Defendant Richard Keith and the Insured [Ultimate Escapes]" and whether Keith was an Ultimate Escapes executive according to the policy's definitions. *Id.* at 844. And

14

third, National Union settled Jupp's claims without admitting that the policy covered Jupp's claims against Keith as Ultimate Escapes's co-CEO. Indeed, the policy gave National Union the right to negotiate and enter into a settlement for any reason. And in doing so, National Union could settle on any basis it pleased without disturbing the plain language of the Specific Entity Exclusion. In sum, based on the plain policy language and the facts of P&S's case, National Union had no duty to defend or indemnify the defendants in P&S's case—one involving Private Escapes and Keith acting as its CEO.

## IV.   Other Claims

P&S briefly argues that the district court erred in granting summary judgment to National Union on P&S's other claims because of the district court's purported error in concluding that there was no coverage. In Colorado, if the insurer has "no legally cognizable duty to defend or indemnify a claim," then an insured's other claims cannot survive. *Berry & Murphy*, 586 F.3d at 815; *see Leprino v. Nationwide Prop. & Cas. Ins. Co.*, 89 P.3d 487, 492 (Colo. App. 2003) (affirming dismissal of insured's claims, including a bad-faith claim, because the facts alleged did not "even potentially" trigger coverage). Accordingly, we affirm the district court's grant of summary judgment for National Union on P&S's remaining claims.

**CONCLUSION**

We agree with the district court that the Specific Entity Exclusion precludes coverage of P&S's claims, and we find P&S's other arguments unavailing. We affirm the district court.

Entered for the Court


Gregory A. Phillips
Circuit Judge